Leo L. LOWY, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 9, Docket 24888.

United States Court of Appeals
Second Circuit.

Argued Oct. 23, 1958.

Decided Feb. 2, 1959.

Maurice V. Seligson, New York City, for petitioner.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Andrew F. Oehmann, Acting Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SWAN and MOORE, Circuit Judges, and KAUFMAN, District Judge.

MOORE, Circuit Judge.

The taxpayer, Leo L. Lowy, petitions to review the decision of the Tax Court finding deficiencies in income taxes for the years 1941, 1942 and 1943 in the respective amounts of $1,909.16, $44,598.-70 and $62,256.60. Fraud penalties of 50% were added for 1942 and 1943, i. e. $22,299.35 and $31,131.72 respectively.

Since 1927 taxpayer had been engaged in the business of manufacturing ball and roller bearings. From 1927 to 1931 he accumulated machinery in New York and New Jersey and opened a small experimental shop where he manufactured tapered roller bearings. In April 1930 taxpayer formed a corporation, Tapered Roller Bearing Company, Inc., to which he transferred some of his machinery and tools. Tapered's tax return for 1930, signed under oath by taxpayer, stated an opening inventory of $300,000 and machinery and equipment of $700,-000. He subsequently admitted this statement was false.

Because of financial difficulties Tapered's machinery, fixtures and equipment were mortgaged to secure a loan and shortly thereafter taken in foreclosure by the lender. The taxpayer himself was then petitioned into personal bankruptcy. Never discharged in bankruptcy he recommenced business in 1934 with the equipment lost in foreclosure, having obtained permission from the lender to use both the equipment and a portion of the lender's plant. He carried on in this manner manufacturing and selling bearings in his own name until the end of 1937.

During 1933 taxpayer, with the financial and legal assistance of an attorney named Garfield, recovered a substantial quantity of previously manufactured bearings (referred to as "stock bearings") for an outlay of $5,600. These bearings taxpayer claimed at times had great value; at other times when the opposite better suited his purposes that they were worthless because they had not been properly case hardened.

On December 24, 1937 taxpayer caused to be incorporated the American Rolbal Corporation (Rolbal). He was the sole stockholder. Rolbal continued the operations in which taxpayer had been engaged from 1934 to 1938 using the same equipment. From 1938 to 1943 he sold bearings manufactured during those years as well as bearings previously manufactured, the sales volume for the former being $247,872.84; for the latter $233,-327.29.

During the years 1941, 1942 and 1943 taxpayer received substantial sums from Rolbal which he failed to report as income. In addition he made many purchases for his own account which he entered as Rolbal expenses. The Commissioner attributed these items to income. The tax thereon gives rise to the deficiencies now in issue. The taxpayer in turn argues that these sums were not income but consisted of repayment of loans by him to Rolbal, sums due from the sale of his own bearings to Rolbal (the stock bearings) and that sizeable amounts of cash received from Rolbal were used by him for corporate purposes.

The taxpayer's case cannot be properly appraised without some reference to a previous tax case before the Tax Court involving Rolbal and very similar facts. This court affirmed *per curiam* on the findings of fact and the opinion below of the Tax Court (American Rolbal Corp. v. Commissioner of Internal Revenue, 2 Cir., 1955, 220 F.2d 749). In that case the deficiencies imposed resulted principally from the disallowance of certain deductions relating to machin-

ery and equipment used to manufacture Rolbal's products. At first Rolbal claimed that the machinery was owned by Lowy and leased to Rolbal. Lowy put an estimated value of $3,600,000 on the machinery. On its 1942 and 1943 tax returns Rolbal deducted $360,000 as annual rent for the machinery. The rent in fact was not paid to Lowy. Despite advice from Rolbal's accountant that rent not paid was not an allowable deduction Rolbal not only did not file an amended return for 1942 but even continued the same practice for 1943. Nor did Lowy report as income these rental payments. In its first petition before the Tax Court Rolbal contended that Lowy constructively received the income which he allowed his wholly owned corporation to keep as working capital. Shortly before the trial Rolbal by amendment changed its entire fact theory by claiming that it and not Lowy owned the machinery and that as the owner it was entitled to annual depreciation of $360,-000. In their endeavor to preserve the deductions and defeat the deficiencies both Rolbal and Lowy showed a marked ability to adjust the facts to achieve their hoped for objective. The Tax Court accepted the Rolbal ownership theory, found a basis of $1,000,000 and allowed deductions for depreciation of $100,000 for each of the years 1942 and 1943.

The other principal source of disallowances was a series of checks drawn by Rolbal and signed by Lowy charged as Rolbal expenses but used to pay for personal items. A few of the many items will serve to illustrate the flagrant character of the fraud. In 1942, Mrs. Lowy purchased a mink jacket from Zinn's Fur Shop for $550. The Rolbal check stub indicated payment to Zinn's Machine Company and the item was charged on Rolbal's books to "maintenance." Jewelry in large amounts was listed as "Factory Supplies" and "General Expense." A piano for the Lowy home was purchased for $1,212, the payment entered as to the "Paul Contracting Company" and charged to factory maintenance.

The sale price of scrap metal sold by Rolbal for $14,281.47 and $5,079.87 was paid to Lowy personally and was neither reported as Rolbal income or by Lowy.

These and many other similar instances amply supported the finding of fraud and the imposition of the fraud penalty in the Rolbal case. In the Rolbal case, as here, Lowy contended that he was using his own funds for corporate expenses and reimbursing himself by charging personal items to Rolbal. The Tax Court in the Rolbal case found that there was no evidence to support this contention.

The Tax Court in taxpayer's case now on review found essentially the same facts as the court in the Rolbal case. The items disallowed there would appear as unreported personal income here. The additional income determined by the Commissioner was $9,836.76 (1941); $74,263.26 (1942); and $88,-775.97 (1943). Lowy's only attempted justification (as in the Rolbal case) is to say that these amounts were either reimbursements for loans by him to Rolbal or for Rolbal expenses paid out of his personal funds. The "loan" contention is based upon the assertion that from 1938 through 1943 the proceeds of the sales of the "stock bearings" which Lowy claimed to own personally went into Rolbal's accounts and that these sums should be regarded as loans. As the Tax Court points out "there is no evidence other than Lowy's own testimony, that the proceeds from such sales went into Rolbal's bank account" and if so, "there is nothing to show that they were not capital contributions by Lowy, the sole stockholder;". The books of Rolbal did not show any loans payable to Lowy and there was no documentary evidence by cancelled checks or book entries to support the alleged payments for corporate purposes.

A review of Lowy's testimony discloses a mass of "double-talk" which

is unworthy of belief. If he chose not to keep records or to so keep them that they did not reflect the true situation he can scarcely complain if it be held that he has not satisfied the burden placed upon him.

 However, neither can the Commissioner's conclusions be accepted without supporting findings. Although the findings deal in great detail with taxpayer's business career and his fraudulent practices there are no findings relating to various items which he claims were paid for specific corporate purposes. Thus with respect to funds allegedly paid in cash to employees for vacation pay, as to which there are affidavit acknowledgments of receipt from twenty-two employees, it is scarcely a reason for rejection of the item to say that "the employees were unaware of the source of the cash." Furthermore it would appear inconsistent to hold that taxpayer had received large sums either from Rolbal or the "stock bearings" and yet conclude that "The record does not support a finding that Lowy personally had the sums he claims to have spent for Rolbal's expenses."

For purposes of clarification further findings should be made as to: (1) sums allegedly paid for vacation expenses; (2) the $15,000 allegedly paid in settlement of the labor controversy; and (3) the $8,600 [1] allegedly withdrawn by taxpayer from Rolbal in 1941.

Great stress is placed by taxpayer upon the admission in evidence of testimony by his former attorney, Garfield, upon the ground that he was revealing attorney-client privileged communications. Where an attorney and his client are engaged in business dealings as was the case here the attorney-client rule does not apply. Where the testimony sought to be elicited was within the privileged area, the Tax Court sustained the objection. There was no error in receiving Garfield's testimony.

The decision of the Tax Court, therefore, is modified to the extent of remanding for further findings as to the items mentioned in this opinion and in all other respects affirmed. Denial of motion to reopen affirmed.

---

1. Rolbal apparently had a deficit of $4,-852.56 for 1938 and losses for 1939, 1940, and 1941 were conceded. It is doubtful whether this amount should have been treated as a dividend.