Cyrilla MURPHY and George H. Murphy,
Appellants,

v.

Harold L. DYER, Appellee.

No. 10109.

United States Court of Appeals
Tenth Circuit.

March 10, 1969.

Rehearing Denied May 29, 1969.

See also D.C., 260 F.Supp. 822.

Paul A. Barber, Colorado Springs, Colo., for appellants.

Arthur H. Downey, Denver, Colo. (H. Gayle Weller, Denver, Colo., with him on the brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

In this diversity, malpractice suit arising in Colorado by a patient against her Colorado Springs doctor the defenses were the statute of limitations and non-negligence. The jury returned a general verdict for the defendant under instructions submitting the case on both limitations and negligence. On appeal, the patient, Mrs. Cyrilla Murphy, complains of the court's instructions on limitations but since no objections were made to them in the trial court and they do not appear to be palpably wrong we accept them as the law of the case. Rule 51 F.R.Civ.P. 28 U.S.C., Iannacito v. Denver & Rio Grande Western R. Co., 380 F.2d 1019 (10th Cir. 1967) and cases cited.

If, of course, the verdict of the jury can be said to rest upon the repose of the statute of limitations our lawsuit is at an end. But the case was not submitted on special issues nor was the court requested to do so.[1] And in such circumstances we cannot surmise that the jury's verdict rested on limitations.[2] Maryland v. Baldwin, 112 U.S. 490, 5 S. Ct. 278, 28 L.Ed. 822 (1884) followed in Sunkist Growers, Inc. v. Winckler & Smith Co., 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962).

This brings us to the negligence issue and directly to the exclusion of expert medical testimony which came about in this way: Mrs. Murphy claimed that the defendant, Dr. Harold Dyer, negligently gave her a spinal anesthetic (commonly known as a "saddle block") which resulted in serious neurological deficiencies. Dr. Dyer, a certified obstetrician and gynecologist, took the deposition of Dr. Daniel Moore, a noted anesthesiologist from Seattle, Washington but did not put it into evidence. At the trial, counsel for Mrs. Murphy offered into evidence portions of it to prove (1) the standard of care required of Dr. Dyer and (2) the res ipsa loquitur theory that if Dr. Dyer had given the spinal in accord with the prescribed standards Mrs. Murphy's injury would not have occurred. The court excluded this evidence in the absence of a showing that Dr. Moore was familiar with the standards employed in Colorado Springs or similar communities and for the further reason that the specialties of Dr. Dyer differed significantly from those of Dr. Moore. It seems that Colorado follows the Restatement rule to the effect that a physician "is required to exercise the skill and knowledge normally possessed by members of that profession * * *

---

1. This case demonstrates the efficacy of special verdicts under Rule 49 F.R.Civ.P. especially on appellate review. See Federal Special Verdicts by Chief Judge John Brown, 44 F.R.D. 338.

2. Divergent views exist among state and federal courts on this question. See 89 C.J.S. Trial § 505 and 5 Am.Jur.2nd Appeal and Error § 787. Favoring upholding a general verdict submitted on two or more grounds if one ground of recovery by appellee is free from error while another ground is not are the following: Lee v. Pennsylvania R. Co., 192 F.2d 226 (2nd Cir. 1951); Cross v. Ryan, 124 F. 2d 883 (7th Cir. 1941) cert. den. 316 U.S. 682, 62 S.Ct. 1269, 86 L.Ed. 1755 and Vareltzis v. Luckenbach Steamship Co., 258 F.2d 78 (2nd Cir. 1958). And suggesting that in diversity cases the state rule be followed are Firemen's Ins. Co. v. Follett, 72 F.2d 49 (7th Cir. 1934) and Volasco Products Co. v. Lloyd A. Fry Roofing Co., 308 F.2d 383 (6th Cir. 1962).

in good standing in similar communities." Restatement of Torts 2d, § 299A. See Foose v. Haymond, 135 Colo. 275, 310 P.2d 722 (1957); Klimkiewicz v. Karnick, 150 Colo. 267, 372 P.2d 736 (1962); and Brown v. Hughes, 94 Colo. 295, 30 P.2d 259 (1934). Certainly the similar locality test has been subjected to persuasive, scholarly criticism and has recently been rejected by two states in well reasoned opinions. See Prosser, Torts § 32; Douglas v. Bussabarger, 438 P.2d 829 (Wash. 1968); and Brune v. Belinkoff, 235 N.E.2d 793 (Mass. 1968). But in this diversity suit we are, of course, bound by the Colorado rule.

The difficulty of our case lies in determining whether the Seattle witness was properly qualified to testify concerning the standards of obstetrical anesthetics as practiced in Colorado Springs. This brings us to a close examination of pertinent parts of the deposition.

On cross-examination by plaintiff's counsel, Dr. Moore testified that while the "standard practice in one community may vary to another community * * *" "the general principal [sic] of administering a saddle block are generally adhered to and fairly well established." To make the testimony competent, it was encumbent on Mrs. Murphy to affirmatively show that Dr. Moore was familiar with the practice in communities like Colorado Springs which does not necessarily mean that he had practiced his specialty there. Dr. Moore was not a Colorado Springs physician but he was a renowned anesthesiologist. He has written texts on the art, science and practice of anesthesiology with particular reference to the techniques of "spinal blocks". His books are the standard texts in the specialty in medical schools. But the question here is not whether he was a renowned expert but whether, as such, he was familiar with the standards of practice and particularly the techniques employed in Colorado Springs or similar communities. We must judge the defendant's

standard of care by the norms of the local practice.

There is no predicate in this record that Dr. Moore was familiar with the prevailing practices in Colorado Springs or that the anesthesiologists in Colorado Springs follow the "generally adhered to" textbook standards of Dr. Moore. Dr. Dyer recognized Dr. Moore as "one of many authorities" in the field but he said he did not follow Dr. Moore's technique. While it may not make good evidentiary sense to say that a renowned specialist is incompetent to testify concerning standards of care in the practice of his speciality, it does seem to be the prevailing rule in Colorado. And, after all, the trial court, not this court, is the first and best judge of the competency of expert witnesses. See Riley v. Layton, 329 F.2d 53 (10th Cir. 1964). In Riley we sustained the trial judge's admission of expert testimony under the similar locality rule based upon a showing that while the expert had not practiced in the defendant's locale, he was familiar with the practice in similar communities. Likewise the plaintiff made no showing that the standards of administering a spinal anesthetic would be the same for a certified obstetrician as for a certified anesthesiologist. In the area of professional standards the law is guided by expert testimony. Without this showing plaintiff failed, as a matter of law, to qualify Dr. Moore to testify relating to the facts in this case. The exclusion was proper and must be sustained.

Complaint is also made of the exclusion of a hypothetical cause and effect question. Plaintiff's counsel asked the question which included details relating to a technique of administering a "saddle block". The technique as first described omitted any reference to the insertion of the spinal needle through an introducer and the withdrawal of the stylette to show a clear spinal fluid (called aspirating) before injecting the anesthetic. On defendant's objection, the trial judge required the plaintiff to restate the question including these two

features to accord with the technique as described by Dr. Dyer on cross-examination. In his discovery deposition, Dr. Dyer omitted any reference to these features but added them at trial. We think the required correction was error and counsel should have been allowed to ask his question in accord with his theory of the case, i. e. that Dr. Dyer did not use the introducer or aspirate, leaving the integrity of the question to cross-examination. 2 Wigmore on Evidence, (3rd Ed.) § 682(b).

The error committed was harmless, however, and in no way prejudicial to the plaintiff. The question as first put to the expert witness called for an opinion as to the cause of the injury. As restated the witness was still able, with reasonable medical certainty, to testify "that there is a causal relationship * * between the administration of the anesthetic and the neurological deficit or neurological findings that Mrs. Murphy has." No offer of proof was made by the plaintiff indicating that she intended to prove anything other than the cause of the injury by this witness and, therefore, she could not have been harmed by the error. Rule 61, F.R.Civ.P., 28 U.S.C.

The remaining asserted errors have no merit. In the absence of some testimony of a prescribed standard of care the observance of which would have avoided the injury a res ipsa loquitur instruction would have been improper. See Weiss v. Axler, 137 Colo. 544, 328 P.2d 88 (1958). And whatever may have been the element of surprise to the plaintiff in Dr. Boyd's testimony, concerning an alternative causal theory of the injury, i. e. an allergic reaction, there is nothing in the record to indicate that counsel made a point of it in trial, or that he requested time to meet it. Likewise, the exclusion of requested rebuttal witnesses by the plaintiff as cumulative was well within the trial court's discretion and we find no abuse in his exercise of it.

The judgment is affirmed.

Pearl O. **MEADOWS**, Plaintiff-Appellee,

v.

Wilbur J. **COHEN**, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 26674.

Summary Calender.

United States Court of Appeals Fifth Circuit.

Feb. 4, 1969.

Rehearing Denied March 7, 1969.

Ernest Morgan, U. S. Atty., R. Caballero, Asst. U. S. Atty., El Paso, Tex., Robert E. Kopp, Kathryn H. Baldwin, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., for appellant.

Jack N. Ferguson, El Paso, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Secretary appeals from the District Court's judgment awarding certain disability benefits to appellee Pearl Meadows. The facts are not disputed here, and the legal issues presented are relatively simple. The specific question is whether any basis exists for not restricting the retroactive benefits to one year prior to the application. Having carefully considered the briefs and record, we are convinced that the appeal from the District Court's decision is appropriate for summary disposition without oral argument. Pursuant to new Rule 18 of the Rules of the United States Court of Appeals for the Fifth Circuit, the Clerk of this Court has been directed to put this case on the summary calendar and to notify the parties in writing.[1]

This action was brought by the claimant, Mrs. Pearl Meadows, pursuant to 42 U.S.C.A. § 405(g), to obtain judicial review of the Secretary's decision that her disability began December 1, 1965, rather than in June 1960 as she had contended. The District Court, reversing the Secretary's decision, held that her disability did begin in June 1960 and awarded benefits beginning from that date. In the present appeal the Secretary does not contest the finding on the initial date of disability.

The difficulty here is that Mrs. Meadows' claim for disability benefits was first filed with the Secretary on December 27, 1965. Under the Social Security Act, the retroactive award of benefits is limited to a period of twelve months prior to the date of the claimant's application.[2]

---

1. New Rules 17–20, adopted by the Fifth Circuit on December 6, 1968, are set out in the Appendix to this opinion. For a general discussion of the need for and propriety of summary review of certain appeals, see Groendyke Transport, Inc. v. Davis, 5 Cir., 1969, 406 F.2d 1158 [January 2, 1969]. For other cases in which we have employed the summary procedures, see Wittner v. United States, 5 Cir., 1969, 406 F.2d 1165 [1969]; United States v. One Olivetti Electric 10-Key Adding Machine, etc., 5 Cir., 1969, 406 F.2d 1167 [1969]; United States v. One 6.5 mm. Mannlicher-Carcano Military Rifle, etc. and John J. King, 5 Cir., 1969, 406 F.2d 1170 [1969] and NLRB v. Great A. & P. Tea Co., 5 Cir., 1969, 406 F.2d 1173 [1969]; Thompson v. White, 5 Cir., 1969, 406 F.2d 1176 [1969]; Diffenderfer v. Homer, 5 Cir., 1969, 408 F.2d 1344 [1969].

The First Circuit has likewise expressly upheld summary disposition without oral argument. Magnesium Casting Co. v. Hoban, 1 Cir., 1968, 401 F.2d 516.

2. The statute provides:

Filing application

"(b) An application for disability insurance benefits filed before the first month in which the applicant satisfies the requirements for such benefits * * * shall be deemed a valid application only if the applicant satisfies the requirements for such benefits before the Secretary makes a final decision on the application. If, upon final decision by the Secretary, or decision upon judicial review thereof, such applicant is found to satisfy such requirements, the application shall be deemed to have been filed in such first month. *An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit for such month if he files such application before the end of the 12th month immediately succeeding such month.*" (Emphasis added.)

Thus, regardless of the initial date of her disability, Mrs. Meadows could never be legally entitled to an award of benefits for any time prior to December 27, 1964 —the date marking the twelve-month limit on retroactivity in her case.

With a not uncommon degree of governmental alertness as papers presumably pass to and from Texas and Washington and in and through at least a couple Executive departments, the Secretary first brought the limiting provision to the attention of Mrs. Meadows *and* the District Court in a post-judgment motion, under F.R.Civ.P. 60(b),[3] seeking modification of the judgment to limit the award of benefits to the appropriate period under the statute. The District Court declined to modify its judgment. We reverse and modify.

The Government's position, simply stated, is that the retroactive effect of the disability award is limited by statute and that the District Court erred in failing to bring its judgment into conformity with the law.[4] Mrs. Meadows, on the other hand, makes essentially one argument in support of the District Court's decision, namely, that because the statutory provision limiting retroactivity was not raised at trial or within the 10 days permitted under F.R.Civ.P. 59(e), the Secretary was precluded from relying upon it.[5]

This Court, though sympathetic to the lament of the claimant who sees the sovereign getting breaks unobtainable by the citizen, cannot agree that the Secretary has "waived" reliance on the statute. Mrs. Meadows' primary claim before the agency was that her disability originated in 1960, and that benefits were therefore owed to her from that date. The Secretary took the position, and the Hearing Examiner found, that the disability did not arise until December 1965. At the agency level, then, the question of payment for any time prior to December 1965 was never directly presented, since it had been held that no disability existed before that date. Accordingly, with no question of retroactive payments having arisen, the agency cannot be too greatly faulted for

---

42 U.S.C.A. § 423(b). See also Ray v. Gardner, 4 Cir., 1967, 387 F.2d 162; Sangster v. Gardner, 6 Cir., 1967, 374 F.2d 498.