**RADIO CORPORATION OF AMERICA, Plaintiff,**

v.

**RADIO STATION KYFM, INC., Cleeta John Rogers, Defendants and Third-Party Plaintiffs-Appellees,**

**BANKERS FINANCIAL LIFE COMPANY (formerly American Preferred Life Insurance Company), Third-Party Defendant-Appellant,**

**Kennesaw Life and Accident Insurance Company, Harry McFarland and Delbert Livingston, Third-Party Defendants.**

No. 172-69.

United States Court of Appeals, Tenth Circuit.

March 24, 1970.

Loyd Benefield, Oklahoma City, Okl. (Howard B. Austin, Oklahoma City, Okl., on the brief), for appellees.

Walter D. Hanson, Oklahoma City, Okl. (James M. Robinson, Oklahoma City, Okl., on the brief), for appellant.

Before LEWIS and HILL, Circuit Judges, and LANGLEY, District Judge.

HILL, Circuit Judge.

This diversity suit originated when Radio Corporation of America sued radio station KYFM on a promissory note and chattel mortgage given to RCA for the purchase price of radio station equipment. Cleeta John Rogers was made a defendant to the suit by reason of an agreement made in writing by him guaranteeing the payment of the purchase price of the equipment. KYFM and Rogers then filed a third-party complaint against Bankers Financial Life Company and Kennesaw Life and Accident Insurance Company alleging that the latter parties are ultimately liable for any recovery against them by RCA. In pleading to the third-party complaint appellant filed only a general denial. Judgment was entered in accordance with the prayer of the original complaint in favor of RCA against KYFM on the note and against Rogers on his guaranty of KYFM's obligation to RCA. After the trial of the third-party complaint to a jury, a verdict was rendered in favor of KYFM and Rogers and against Bankers. The theory of the third-party complaint was, (1) Bankers had requested Rogers to execute the written guaranty to RCA and promised to hold Rogers harmless on that guaranty, and (2) American Preferred Life agreed with KYFM to pay for the RCA equipment and thereby induced KYFM to make the purchase.

The undisputed facts developed at the trial of the third-party action are that in 1962 Rogers obtained an interest in radio station KYFM. At that time he was vice-president and legal counsel for American Preferred Life Insurance Company whose successor was Bankers Financial Life Company.[1] At the time Rogers obtained his interest in KYFM, the radio station was in financial trouble. And when the financial problems continued into the fall of 1962, Rogers undertook to raise money for KYFM by selling 65% of KYFM's stock to American Preferred Life. Rogers negotiated the transaction for both companies, and according to Rogers' testi-

1. Rogers was also a stockholder, director, and legal counsel for American Preferred Corporation which owned all of the stock of American Preferred Life Insurance Company.

mony the deal was consummated. However, the stock purchase never appeared on American Preferred Life's books. Instead, American Preferred Life's financial statements for 1962 reflected a $16,500 account receivable, which according to Rogers was an attempt to disguise the stock purchase so that American Preferred Life's year-end records would look better.

While the stock purchase negotiations were taking place, KYFM was attempting to buy radio station equipment from RCA on credit. RCA wanted a guarantee to back KYFM's note, so Rogers wrote RCA on December 20, 1962, and enclosed his personal guarantee of KYFM's note. Rogers testified that he gave RCA his personal guarantee because American Preferred Life requested him to do so and also agreed to provide for his release from his guarantee; American Preferred Life did not want to become the guarantor at that time because they did not want to reflect their interest in KYFM in their year-end financial statements. On September 21, 1966, Rogers renewed and extended the guaranty pursuant to a provision for such extension in the original guaranty. The jury in this controversy found in favor of KYFM and Rogers and against Bankers Financial Life Company in the amount of $20,000, which was the amount of RCA's judgment against KYFM and Rogers.

At the outset of our discussion of the issues raised here, we must point out that we are guided by some very definite and well settled legal principles. First in mind is Rule 8(c), F.R. Civ.P., 28 U.S.C. This rule requires a party pleading to a preceding pleading to set forth affirmatively all matters which the pleading party intends to use as an avoidance or affirmative defense. If such defenses are not affirmatively pleaded, asserted with a motion under Rule 12(b) or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case.[2] The statute of frauds, illegality of an act, lack of authority to enter into a contract and "any other matter constituting an avoidance" are clearly included in the affirmative defenses covered by Rule 8(c). An affirmative defense may not be first effectively raised during the trial of a case simply by objections to evidence, offers to introduce evidence or by motions unless the parties impliedly or expressly agreed to the injection of the new issue into the case and the trial of the same.[3] It is axiomatic that the failure of a party to effectively raise an affirmative defense precludes any requirement that the trial judge present such issue to the jury by an instruction.[4]

2. Albee Homes, Inc. v. Lutman, 406 F.2d 11 (3d Cir. 1969); Badway v. United States, 367 F.2d 22 (1st Cir. 1966). *See* Systems Incorporated v. Bridge Electronics Company, 335 F.2d 465 (3d Cir. 1964); Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir. 1960); Kaye v. Smitherman, 225 F.2d 583 (10th Cir. 1955). *See also* 2A Moore's Federal Practice ¶ 8.27 [3] (2d ed. 1968).

3. Rule 12(b), F.R.Civ.P., 28 U.S.C. *See* Branding Iron Club v. Riggs, 207 F.2d 720, 724 (10th Cir. 1953). *See also* Simms v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941).
It should be noted that we are not holding that if a party fails to raise an affirmative defense in his original responsive pleadings he is forever barred from raising it. Normally the proper remedy is to move for leave to amend under Rule 15 of the Federal Rules of Civil Procedure. Albee Homes, Inc. v. Lutman, 406 F.2d 11 (3d Cir. 1969). Rule 15(b) allows amendments to conform to the evidence when the issues not raised by the pleadings are tried by express or implied consent of the parties. "The rule is applicable only where it clearly appears from the record that an issue not raised in the pleadings and not preserved in the pretrial order has in fact been tried and that this procedure has been authorized by express or implied consent of the parties." Systems Incorporated v. Bridge Electronics Company, 335 F.2d 465 (3d Cir. 1964).

4. Bethel v. Thornbrough, 311 F.2d 201 (10th Cir. 1962); Taylor v. Reo Motors, Inc., 275 F.2d 699, 703 (10th Cir. 1960).

Appellant Bankers first urge here that appellees failed to make out a case for the jury and that the trial judge erred by not granting appellant's motion for judgment notwithstanding the verdict. In doing so, appellant raises a spate of issues, the first of which is the contention that American Preferred Life's purchase of KYFM stock was an illegal investment for an insurance company under Oklahoma statute. "Illegality" however is an affirmative defense. Since it was not affirmatively set forth in appellant's pleadings or tried by the express or implied consent of the parties, it was waived and therefore not an issue at the trial of the third-party complaint. We are thereby precluded from considering the point. It should be noted that it is difficult to understand how this point relates to the agreement of American Preferred Life to provide for the release of Rogers as guarantor and hold him harmless on his guarantee of KYFM's note. Likewise we are precluded from considering whether the agreement to hold Rogers harmless on his guarantee is invalid under the Oklahoma Statute of Frauds because the statute of frauds is also an affirmative defense which was not properly pleaded by appellant's answer nor was the issue presented during the trial and tried by the express or implied consent of the third party complainants.

Another point not properly before this court sitting in review is appellant's point that the contract of guarantee claimed by Rogers is illegal. Under this heading of illegality, appellant asserts that the president of American Preferred Life, like any other corporation president has no inherent power to contract for the corporation. Appellant urges that the president lacked authority to enter into a contract. But, "The defense of want of authority is an affirmative defense and must be specifically pleaded." [5]

This brings us to appellant's next three points: That American Preferred Life made all the investments which it agreed to make; that there was never any obligation flowing to KYFM from American Preferred Life; and no one on behalf of American Preferred Life authorized Rogers to execute an extension of the guaranty in 1966. Appellant provides us with no authority by which we may review the record and hold in his favor on these points. Furthermore, it is not clear from the argument under these points whether they are posed as an avoidance of whether appellant is disputing the sufficiency of the evidence establishing the agreements made by American Preferred Life. If appellant is urging the former, then once again appellant has failed to assert an affirmative defense in a timely manner under Rule 8(c). If it is the latter, then the argument is without merit since we have reviewed the record and have determined that there is sufficient evidence to support the jury's verdict. If appellant's point is that these are mixed questions of fact and law that should have been submitted to the jury under proper instructions, then his failure to make specific objections after the trial judge instructed the jury precludes us from considering the points.[6]

Finally we deal with appellant's contention that the trial judge erroneously instructed the jury. At trial, appellant submitted requested instructions to the trial judge, several of which were refused and excepted to. After the jury was instructed and before it retired to deliberate the trial judge inquired whether either counsel had any objections to the instructions. Counsel for appellant objected to several of the instructions as being of no aid

5. Branding Iron Club v. Riggs, 207 F.2d 720, 725 (10th Cir. 1953).

6. Murphy v. Dyer, 409 F.2d 747 (10th Cir. 1969) ; Union Pacific Railroad Company v. Lumbert, 401 F.2d 699 (10th Cir. 1968) ; Smith v. Greyhound Lines, Inc., 382 F.2d 190 (10th Cir. 1967) ; Dunn v. St. Louis-SanFrancisco Railway Company, 370 F.2d 681 (10th Cir. 1966).

to the jury and objected to the failure of the trial judge to give appellant's requested instructions on the Oklahoma statute governing investments by Oklahoma insurance companies.[7] Appellant urges here, as before in the trial court, that Instruction No. 3 is a good abstract statement of the law but of no aid to the jury in this case. We cannot agree that this instruction was irrelevant to the controversy submitted to the jury. Moreover, the trial judge did not err in not giving appellant's requested instruction on the Oklahoma statutes governing the investments of insurance companies because as we have made clear above, the legality of the insurance company's investments was not an issue properly raised and before the trial court. It is the duty of the trial court to instruct the jury on issues raised by the pleadings and supported by the evidence and nothing more.[8] Likewise, we find no merit in appellant's argument which makes the same objection to Instruction No. 4A. Here again appellant objects to the refusal of the trial judge to include the statutes on insurance company investments in the instructions; and here again we say that the trial judge was correct in not instructing on an issue not present in the pleadings or proof. The objection to Instruction No. 4 is also without merit because Instruction No. 5 substantially gives the instruction of proof of agency that appellant would substitute for Instruction No. 4.

In addition to the filed appendix and briefs we called for and have carefully reviewed the trial transcript. With the entire record before us and in the light of the well established rules of practice and procedure we are compelled to the conclusion that the trial judge adequately submitted the triable issues to the jury and that there is sufficient evidence in the record to support the verdict returned by the jury.

Affirmed.

7. The instructions given were:
"INSTRUCTION NO. 3
A CORPORATION CAN ACT
ONLY THROUGH AGENTS
"The corporations in this case and any corporation, as such, can act only through their officers and employees, and others designated by them as their agents.
"Any act or omission of an officer, employee or other agent of a corporation, in the performance of his duties, or within the scope of his authority, is held in law to be the act of the corporation.
"INSTRUCTION NO. 4
PRINCIPAL AND AGENT—DEFINED
"You are instructed that the relationship of principal and agent is created as the result of either a contract between the parties or by the conduct of the parties manifesting that one of them is willing for the other to act for him subject to his control and direction, and that the other or others consent so to. act. The relationship may arise by reason of an express contract between the parties or the relationship may be implied without an express contract from the words and conduct of the parties under the circumstances of the particular case.

"INSTRUCTION NO. 4A
CONTRACT DEFINED
"You are instructed that a contract, whether written or oral, is an agreement between two or more parties, competent to contract, upon a lawful subject matter, with a legal consideration, a mutuality of agreement and mutuality of obligation.
"No precise or set form of words is necessary to constitute a contract as the agreement of parties may be inferred from their acts and conduct as well as from their words.
"In order to constitute a contract between two parties, however, their minds must come together and agree upon all its essential terms and conditions. In other words, there must be a meeting of the minds of the contracting parties upon the essential terms and conditions of the subject about which they are contracting."

8. Metropolitan Paving Company v. Puckett, 389 F.2d 1 (10th Cir. 1968); Century Refining Company v. Hall, 316 F.2d 15 (10th Cir. 1963); Bethel v. Thornbrough, 311 F.2d 201 (10th Cir. 1962); Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir. 1960).