**Fred L. YOUNG and Eleanor L. Young, husband and wife, and Robert C. Donihue, Plaintiffs-Appellees,**

v.

**John W. TAYLOR, Defendant-Appellant.**

**No. 658–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 19, 1972.

Walter P. Faber, Jr., Salt Lake City, Utah, for plaintiffs-appellees.

Ronald N. Spratling, Jr., Salt Lake City, Utah, for defendant-appellant.

Before PHILLIPS, MURRAH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal from a judgment against appellant John W. Taylor and other defendants in a suit under § 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 of the Securities and Exchange Commission, the Utah Blue Sky Law, Utah Code Ann. § 61–1–22(1)(b) (1953), and common law fraud principles. The judgment recovered was for general damages of $263,800, punitive damages of $50,000 and attorney's fees of $15,000. A separate appeal consolidated with this proceeding and appeals by other parties have all been dismissed and we are concerned solely with that of appellant Taylor. For convenience we will refer to the parties as designated in the trial court.

The complaint centered around an agreement for sale of an office building in Salt Lake City by plaintiffs to defendant Texas Uranium Corporation. Discussions by plaintiff Donihue with the defendants Jenson, Lund, Taylor and others began in May, 1968, and the written agreement was signed shortly. In essence it provided that the purchase price for the building would be $400,000; that the buyer was to assume a mortgage of $125,000 on the building and issue to the seller-plaintiffs investment stock of Texas Uranium; that the value assigned to the stock was twenty cents per share, or a total value of $275,000; and that the buyer would pay certain taxes.

In addition proof of the plaintiffs tended to show that there was also a contemporaneous oral agreement. The plaintiffs testified that the oral agreement was made separately because defendant Lund explained that it could not

lawfully be made a part of the contract involving transfer of the stock. This oral understanding was for payment of $35,000 in cash and delivery of two automobiles in connection with the sale of the office building, and there was also an understanding that $10,000 in cash would be paid on the related sale of a motel to Texas Uranium, but that transaction is not involved on this appeal.

The gist of the misrepresentations claimed was that the plaintiffs were told that the Texas Uranium stock was registered with the Securities and Exchange Commission, which was false; that they were misinformed as to the time the stock had to be held before transfer; that the corporation owned assets of over $8,000,000, including certain business assets, which in fact were nonexistent; and that the corporation owned certain producing mines and business interests, which were not as represented. It was generally on the basis of such proof that the jury returned the verdict against defendants and we will detail the facts further in discussing the issues raised by appellant here.

First, Taylor argues that there was error in admission of prejudicial testimony in violation of the attorney-client privilege. The contention is based on testimony of Mrs. Hansen, secretary to defendant Lund. She testified that she heard a conversation between defendants Lund and Jenson shortly after Mr. Jenson had a conversation with plaintiff Donihue. She was permitted to testify that defendant Jenson remarked to defendant Lund that plaintiffs Donihue and Young "weren't so smart; that they could possibly end up with the properties for nothing."

Counsel for defendants Taylor and Texas Uranium objected, arguing that the statement was heard by Mrs. Hansen in her capacity as secretary to Mr. Lund, attorney for Texas Uranium. Appellant Taylor now says that the trial court instructed that the defendants were in the same status as to liability; that if any defendant should have a judgment against him, then all of the defendants should be held liable; and that, therefore, the privilege extended to each of the co-defendants, except the attorney, and may be asserted by appellant Taylor. We cannot agree and conclude that the contention on the privilege must be rejected.

An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given in the course of his professional employment. Utah Code Ann. § 78–24–8(2) (1953); see Wilcoxon v. United States, 231 F.2d 384 (10th Cir.), cert. denied, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469. Moreover, the privilege does include the communications heard by a secretary or clerk of the attorney, as § 78–24–8(2) also provides. United States v. Kovel, 296 F.2d 918 (2d Cir.).

The trial court overruled the privilege objection for several reasons. First, he held that by examining the attorney, Mr. Lund, the corporation had waived the privilege. Second, he found that there was proof indicating that Mr. Lund was acting as a participant in the transactions and that the consultation was with one interested other than as an attorney. We are satisfied that the record shows that there was a waiver that binds Taylor. See Steen v. First National Bank of Sarcoxie, 298 F. 36 (8th Cir.). We also feel that the record sustains the view that the communication was not privileged because it was made to one who was acting as a participant. United States v. Vehicular Parking, 52 F.Supp. 751, 753 (D.Del.). See also Lowy v. C. I. R., 262 F.2d 809 (2d Cir.). The court also added that there was evidence that this was a communication to facilitate a fraud so that it should not be suppressed, but this further ground need not be considered. In sum, we are satisfied that the record

sustains the ruling and that it was proper as a matter of law.[1]

■ On this appeal there is an added reason why the privilege argument of Taylor is without merit. Texas Uranium is no longer a party to the appeal. Mr. Lund was shown to have been an attorney for Texas Uranium and Jenson, but not to have been counsel for Taylor. "The rule is for the protection of the client. . . ." Wilcoxon v. United States, supra, 231 F.2d at 386. Thus, Taylor may not assert the privilege as a ground for reversal. See In re Young's Estate, 33 Utah 382, 94 P. 731, 732;

United States v. Le Pera, 443 F.2d 810, 812 (9th Cir.); McCormick, Law of Evidence § 96 (1954); 8 Wigmore, Evidence § 2196 (1961).

Appellant Taylor's second proposition on appeal is that the court erred by instructing that if any of the defendants should be found liable then all should be found liable. The challenged portion of the charge is set out in the margin.[2] This instruction relates also to the form of verdict submitted which did not provide for separate verdicts against individual defendants but submitted one form for a verdict assessing damages

---

1. Lund testified that 300,000 or 400,000 shares of Texas Uranium stock were held for him by nominees, in addition to other stock owned by him and his family. Mrs. Hansen stated that the business of the company was generally taken care of by Lund, Jenson and Taylor. Jenson testified that he, Taylor, Lund, Pierson and one Pat Christensen made the policy decisions for Texas Uranium Corporation as a group.

Without objection Lund testified that he had discussions prior to the date of the agreement with Jenson, Taylor and others, and probably Mrs. Hansen, concerning acquisition of plaintiffs' properties. Without objection Lund was asked whether he had a conversation with anyone to the effect that Texas Uranium could get the plaintiffs' properties for nothing, which he denied. He further said that he, Taylor and Jenson each paid one-third of the taxes due on the purchased property because the corporation lacked funds. During cross examination by the attorney for Texas Uranium, Taylor and others, Lund also said that after June, 1968, plaintiff Donihue came back numerous times and talked to Texas Uranium and to Lund about needing money. Lund testified there was an agreement that "several of us would contribute free trading stock to the company who would give it to Mr. Donihue." During the questioning by the attorney for Taylor, Texas Uranium and others, Lund also said there were discussions about ten days before the purchase agreement was made about remodeling the building, and that these conversations included Donihue, Jenson, Taylor, Lund and one Ray Brown. Moreover, after the trial court's ruling admitting the challenged testimony of Mrs. Han-

sen, there was later testimony by Mr. Lund that he had gone to the purchased building and discussed the spa and swimming pool, talked about the electrical work and the air-conditioning; about the need to take the air-conditioning out of all the windows and putting in central air-conditioning.

From these circumstances we are satisfied the trial court was amply justified in finding that Lund principally engaged in the transactions as a participant rather than an attorney. The record also shows that there was a waiver of the attorney-client privilege due to the lack of objection during Lund's testimony.

2. The portion of the instructions in question was as follows:

"Now, the circumstance that these other agents weren't technically officers I think doesn't destroy the proposition that under the evidence as I view it—and I don't mean to usurp your function, you can decide otherwise— but I think it implicit in what has been said in the arguments and the evidence that the defendants are in the same status. They were engaged in a joint enterprise, according to what the evidence appears to me, and in connection with the subject matter involved here, and each was in a sense, the agent of the other.

"And so the form of verdict which has been submitted with the consent of the parties, or will be submitted places the defendants in the same status. If any of the defendants should have a judgment against them, then all of the defendants should; and if none—and if all of the defendants should have a judgment in their favor of no cause of action on plaintiffs' complaints, then each of them should."

against all defendants, if the jury found for the plaintiffs. Appellant vigorously argues that the defendants were entitled to a jury finding on the factual question as to whether the defendants were agents of one another, and as to whether each defendant was severally liable, and that the charge and form of verdict decided these questions and improperly removed them from the jury's deliberations.

■■ While these contentions would be forceful in a proper case, we cannot agree that they are valid here. As the trial court's charge says, the form of verdict was submitted with the consent of the parties. Moreover, there was no objection made after the giving of the court's instruction on this point. The defendants apparently were willing to go the jury on the basis that they were all in the same boat.[3] Therefore a challenge may not now be made to this instruction and the form of verdict. Rule 51 Fed.R.Civ.P.; United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed.2d 555; Murphy v. Dyer, 409 F.2d 747 (10th Cir.).

Third, Taylor argues that the plaintiffs failed to sustain their burden of proof of common law fraud and that the trial court failed to instruct on all the elements of such a claim. Taylor's brief stresses the contention that the several elements of such fraud under Utah law were not expressly covered by the charge.

■ We cannot agree that the trial court failed to instruct sufficiently on fraud. The gist of such a claim does include some nine elements as stated by the Utah Supreme Court; that a representation was made; that it concerned an existing material fact; that it was false; that the person making the representation knew it to be false or made the statement recklessly, knowing he had insufficient knowledge on which to base the representation; that it was made to induce action; that the other party acted on it reasonably and in ignorance of its falsity; that the other party did in fact rely on the statement; that he was induced to act; and that he thereby suffered injury and damage. See Pace v. Parrish, 122 Utah 141, 247 P.2d 273; Stuck v. Delta & Water Co., 63 Utah 495, 227 P. 791; Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527 (10th Cir.).

■ The essential instructions of the trial court on liability and damages are set out in the margin.[4] In the

---

3. As discussed below, note 5 infra, there was substantial proof that the defendants acted in concert. Such proof justified the court in submitting this form of verdict, with the consent of the parties.

4. The essential instructions by the trial court on liability and damages were as follows:

"  .  .  .  .  Particularly is it the obligation to the seller of securities not to make false statements concerning those securities which are material and which induce the other party to buy the securities.

\*    \*    \*    \*    \*

"You've heard the evidence here; and in order to return a verdict for the plaintiffs, the plaintiffs will have had to have shown on all of the evidence that there was some substantial use of the telephone by the defendants or some of them in connection with and in furtherance of the sale of securities, or in order to render it effective or to continue it effective afterwards to preserve the fruits of the sale. And if you found that by a preponderance of the evidence, then the first issue that the plaintiffs must show by a preponderance of the evidence to establish its case has been established.

"Now, the second thing, besides the fact that securities were involved, that the plaintiffs must show is that the defendants so used communication facilities in interstate commerce or the use of the mails to obtain money or property in return for securities by means of any untrue statement of a material fact.

"Now, a fact is material if it's of significance in a buyer's exercising his investment judgment, deciding whether he wants to take stock. And an 'untrue statement' is about what it means.

charge the court did not separate the different types of claims asserted by the plaintiffs under the Federal and Utah Securities Acts and common law fraud. Instead he stated together the required elements of the various theories for recovery. From an examination of the charge as a whole on liability and damages, we are satisfied that the instructions substantially complied with the requirements of Utah law as to common law fraud. Moreover, there was no objection by Taylor to the instructions on these grounds. Since the charge substantially followed the Utah law and was not claimed to be defective in these respects by Taylor, we are satisfied that no reversible error is shown. Rule 51 Fed.R.Civ.P.; United States v. Atkinson, supra; Murphy v. Dyer, supra. We also feel that the proof of these common law fraud elements was sufficient as to Taylor.[5] Therefore, we conclude that Taylor's contentions on the fraud claim are untenable.

Fourth, Taylor contends that the trial court erred by failing to instruct the

---

If there is a statement that is false, that isn't in accordance with the fact, that the maker knows isn't in accordance with the fact, and if it's material, and if it's made with the intention that the buyer of the securities rely upon it, and if he does rely upon it to his damage, then this group of elements has been proved, providing that proof is beyond a reasonable doubt.

"However, if there is no untrue statement shown by a preponderance of the evidence, or if the statement isn't shown to be material, or if the statement isn't shown to have been relied upon, to the damage of the other party, then the one claiming damages must fail.

    \*       \*       \*       \*       \*

"Now, on the question of damages, you are instructed that if either party plaintiffs on the one hand or defendants on the other, defendant with respect to the counterclaim, or plaintiffs with respect to their claim, have shown that false statements were knowingly made with the intent that they be acted upon, and they were acted upon and believed by the other party, to its or their damage, then the one so proving or the side so proving the case, or both sides, if both cases are proved, would be entitled to the damages that have proximately resulted from false statements, if the other elements of the claims that I have explained have been established by a preponderance of the evidence."

5. In substance, the evidence favorable to the plaintiffs showed the following. Taylor was one of the principal stockholders of Texas Uranium. He was a bookkeeper for the corporation and assisted in the preparation of a financial statement showing the value of the 32 Exchange Place Building at $400,000.

It was stipulated that the negotiations with the plaintiffs for purchase of their building were commenced by Jenson and that several days later Taylor and Lund joined in the negotiations. Mrs. Hansen testified that generally Taylor, Lund and Jenson took care of the corporation's business. Jenson said that he, Lund, Pierson, Christensen and Taylor made the policy decisions for Texas Uranium.

Prior to making of the agreement for purchase of the building, discussions about the income of the corporation occurred between Jenson and the plaintiffs. Immediately thereafter further discussions occurred in Taylor's office and there in Taylor's presence Jenson said that the defendants were prepared to give Mr. Donihue and his partner, Mr. Young, $45,000 in cash, two new cars and the stock, and that the defendants would assume the present mortgages that encumbered both properties. The financial statement that Taylor assisted in preparing in August showed that on April 15 the corporation had $69.50 in cash. Taylor also testified that the taxes on the building were paid by him, Lund and Jenson, knowing the corporation needed money. Jenson said these taxes amounted to $825. Thus, the agreement to pay the $45,000 in cash, $35,000 of which related to the Exchange property, was made when the corporation had no such funds.

Other representations were by Lund and Jenson to the plaintiffs, but the documents of transfer were approved by Taylor, Lund and Jenson. The proof does not establish Taylor's presence at the making of the other representations complained of. Nevertheless we are persuaded that the evidence is sufficient to support the jury's verdict against Taylor, considering the proof outlined above and the inferences that might reasonably be drawn from all the circumstances by the jury.

jury as to how damages were to be measured. He says the benefit of the bargain rule was improperly applied instead of the out of pocket rule applicable in the Federal courts, relying on Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, and Chaney v. Western States Title Insurance Co., 292 F.Supp. 376 (D. Utah). And Taylor argues that the value of the building conveyed to the defendants was not $400,000, as used by the jury in calculating damages, since that amount was greatly exaggerated and the plaintiffs were out only $25,000 which they originally paid for the building.

The essential facts on the damages question are simple. The agreement in evidence said that the purchase price for the building was $400,000, with payment to be made by the buyer assuming the $125,000 mortgage thereon and delivery of the Texas Uranium common stock of a value of $275,000. Also there was in evidence a financial statement of the corporation showing the building's value at $400,000 in August, 1968. As credits against recovery of the value of the building which they conveyed to the defendant Texas Uranium, the plaintiffs conceded credit of the $125,000 mortgage assumed, which reduced to $275,000 the recovery sought. In addition the plaintiffs conceded credits for $6,500 they received from the sale of some of the free trading stock given them by defendants, $4,500 as the value of an automobile delivered, and $200 in cash received from Taylor. These additional credits amounting to $11,200 further reduced the recovery sought from $275,000 down to $263,800. It was this amount which was accepted by the jury and awarded as general damages to the plaintiffs in the verdict.

In submitting the damages issue to the jury the trial court in essence charged that the plaintiffs would be entitled to damages that have proximately resulted from false statements, if the other elements of the case were established. The jury was told that it could consider the $400,000 purchase price agreed on by the parties, and that they might take into consideration the financial statement indicating the same amount as a declaration by the defendants that could be considered by them for such weight as they thought it entitled to. The court also referred to the credits outlined above which reduced the damages recoverable by the plaintiffs.

We feel there is no problem here as to whether the benefit of the bargain rule or the out of pocket measure of damages was applied, as there was in Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra. The Texas Uranium stock received by the plaintiffs was tendered to the defendants and refused and then deposited in court, as the pretrial order states. The remaining consideration received by the plaintiffs—$200 in cash and the car and some free trading stock that had been sold—was not returned to the defendant but was properly accounted for by the credits given the defendants. See Bellefeuille v. Medeiros, 335 Mass. 262, 139 N.E.2d 413, 415–416. The building could not be returned by the defendants to the plaintiffs because it had been taken by the mortgagee. The award to the plaintiffs for the value of the building was proper as rescissional damages. See Myzel v. Fields, 386 F.2d 718, 741–742 (8th Cir.). Moreover the damages determined under the court's charge were based on the proof of the value of the building which was what the plaintiffs lost. Therefore, we are satisfied there was no prejudice to the defendants by the instruction on damages and the actual award, which is sustained by the proof.

Taylor also argues that the determination of the building's value and the loss to the plaintiffs should have been based on the building's original cost to them, saying in his brief that this was approximately $25,000. No such proof was offered to challenge that of the value at $400,000. The question of the value of the building was properly

submitted to the jury and its verdict is supported by the record.

■ Fifth, Taylor contends that the trial court erred by instructing the jury to award attorney's fees if they returned a verdict for either general or punitive damages. The court did so instruct the jury and a proper objection thereto was made. If no general damages had been found, the point might have substance. However under the Utah Blue Sky Law the plaintiff may recover the consideration paid for the security, with interest and a reasonable attorney's fee, less certain credits. See Utah Code Ann. § 61–1–22(b). Such recovery was allowed in this case by the award of general damages and the additional award of attorney's fees was therefore proper. The $15,000 amount was stipulated to be a reasonable fee. Thus, we feel this objection to the instruction is without merit.

■ Lastly Taylor argues that the instructions were in error with regard to permitting exemplary damages and attorney's fees and that they may not be recovered in addition to general damages. His contention is primarily grounded on the provision of § 28(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78bb. He also says that permitting recovery of exemplary damages and attorney's fees allows double recovery since the punitive award is intended to include the fee, relying on Tullock v. Mulvane, 184 U.S. 497, 22 S.Ct. 372, 46 L.Ed. 657.

15 U.S.C.A. § 78bb(a) provides in pertinent part as follows:

"(a) The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of."

Here we have a case in the Federal Court because of the assertion of the claim under § 10(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5. With it are joined the claims under the Utah Blue Sky Law and common law fraud principles which may also be heard because of pendent jurisdiction of the claims. Here the question is whether the restriction of § 28(a) operates to limit the recovery to actual damages where the action maintained depends on the federal claim as the basis of jurisdiction. The question is not free from doubt, but we feel that the statute did not intend to bar the award of punitive damages and attorney's fees in a case such as this.

As we have held, the instructions here in substance covered the elements of common law fraud as required by Utah law. The charge also embraced the elements of claims under the Federal and Utah securities laws. The elements of all three claims were combined in a single statement to the jury of the requirements for the plaintiffs to recover general damages, and no alternative bases for such recovery were submitted. Therefore no particular label can be attached to the general damages award made, to the exclusion of other theories. Nevertheless under the charge it is clear that the elements of a Utah Blue Sky claim and a common law fraud claim had to be found to arrive at the general damages award. Thus the elements of valid state claims were implicitly found to exist.

This court has examined § 28(a) in deciding whether punitive damages are allowable along with a claim asserted solely under Rule 10b–5. We found that the federal statute provides no clear answer, but that from the policies underlying the Act and the purpose of exemplary damages, punitive damages are not recoverable in connection with such a federal claim. deHass v. Empire Petroleum Co., 435 F.2d 1223 (10th Cir.).

Schaefer v. First National Bank of Lincolnwood, 326 F.Supp. 1186, 1193 (N.D. Ill.), supports the position of appellant Taylor and denies recovery of

punitive damages with a common law count joined in a similar action. Gann v. Bernzomatic Corp., 262 F.Supp. 301, 304 (S.D.N.Y.), holds, however, that if such a common law claim is established in such circumstances, punitive damages under state law may be awarded. See also Hecht v. Harris Upham & Co., 283 F.Supp. 417, 444–445 (N.D.Cal.), modified on other grounds, 430 F.2d 1202 (9th Cir.). The legislative history provides nothing additional, having only an observation similar to the statutory language. Professor Loss has concluded that the effect of § 28(a) is to allow a plaintiff to use any combination of non-statutory and statutory remedies, although he is not allowed more than the maximum amount recoverable under any of the applicable remedies or his actual damages, whichever is greater. 3 L. Loss, Securities Regulations 1624.

■ Since the statute saves rights and remedies under state law and the elements of such claims were necessarily found by the jury here, we conclude that § 28(a) does not bar this award of punitive damages and attorney's fees. By so construing the statute, effect is given both to the statute's policy for preserving state remedies and to some limitation on damages recoverable. A reasonable limiting effect is given by interpreting § 28(a) as meaning that if a federal claim is maintained as here, recovery of actual damages twice on separate claims in the action is prohibited, but that if the elements of a state claim are necessarily found to exist, punitive damages and attorney's fees allowed under state law are not barred. We feel we should construe the Act in a way that would save these rights under state law. Therefore, we conclude we should sus-

tain the punitive damages and attorney's fees awarded here.

The trial court instructed the jury that if the representations were malicious, oppressive and intentional, punitive damages might be awarded and thus imposed the requirements for an exemplary damages award under Utah general law. See Powers v. Taylor, 14 Utah 2d 152, 379 P.2d 380, 382. As discussed above the Utah Blue Sky statutes also authorize the award of attorney's fees. Therefore we cannot agree that these portions of the damages awarded were improper under the state law as a double recovery.

We are satisfied that no reversible error has been demonstrated and the judgment is affirmed.

MURRAH, Circuit Judge (concurring specially):

We have said with monotonous repetition that the giving or the failure to give an instruction which is unchallenged in accordance with Rule 51 Fed. R.Civ.P., 28 U.S.C., is not reviewable. See Miller v. Brazel, 300 F.2d 283 (10th Cir. 1962), and Murphy v. Dyer, 409 F. 2d 747 (10th Cir. 1969), and cases cited. And see generally Dunn v. St. Louis-San Franciso Railway Company, 370 F.2d 681 (10th Cir. 1967). I see no need to take the time and space to review the correctness of an instruction which is plainly unreviewable. Indeed, continued review operates to erode Rule 51 and the salutary purpose which it was intended to serve.

I therefore concur in the result on those points on appeal which treat the unchallenged instructions of the court.