TRANSPOWER CONSTRUCTORS, A DI-VISION OF HARRISON INTERNA-TIONAL CORPORATION, Plaintiff–Appellee/Cross Appellant,

v.

GRAND RIVER DAM AUTHORITY, an Oklahoma Public Corporation, Defendant–Appellant/Cross–Appellee,

and

Benham Group, Inc., a Delaware Corporation, Defendant.

TRANSPOWER CONSTRUCTORS, A DI-VISION OF HARRISON INTERNA-TIONAL CORPORATION, Plaintiff–Appellee,

v.

GRAND RIVER DAM AUTHORITY, an Oklahoma Public Corporation, Defendant,

and

Benham Group, Inc., a Delaware Corporation, Defendant–Appellant.

Nos. 89–5131, 89–5137, 89–5172, 90–5023 and 89–5132.

United States Court of Appeals, Tenth Circuit.

June 15, 1990.

Edward H. Tricker of Woods & Aitken, Lincoln, Neb., for plaintiff-appellee/cross-appellant.

Rodney A. Edwards (Robert S. Erickson with him on the briefs) of Jones, Givens, Gotcher & Bogan, P.C., Tulsa, Okl., for defendant-appellant/cross-appellee.

Harry M. Crowe, Jr., of Crawford, Crowe & Bainbridge, Tulsa, Okl., for defendant-appellant.

Before MOORE and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.[*]

JOHN P. MOORE, Circuit Judge:

This appeal arises from the successful suit by Transpower Constructors against the Grand River Dam Authority (GRDA) in breach of contract and against The Benham Group, Inc., GRDA's construction manager, in negligence. GRDA contends that the verdict on the breach-of-contract claim should be reversed because the jury's award was speculative and because the contract as well as several non-contractual defenses bar Transpower's claim for damages. Benham asserts that reversal is necessary because Transpower failed to prove that Benham acted in bad faith, proof of which the contract imposes as a prerequisite to Benham's liability in tort. These claims are without merit.

GRDA and Benham also challenge the trial court's award of certain attorney's fees as well as the court's imposition of postjudgment interest on the fees awarded. Transpower cross-appeals the trial court's denial of prejudgment interest. We conclude that the trial court ruled properly on these issues and affirm.

## I. FACTS

Transpower entered a contract to construct a transmission line for GRDA. The contract required Transpower to install the poles, wires, and accessories which GRDA furnished. GRDA awarded the contract to Transpower based on Transpower's bid of approximately $1.5 million, which included a unit price rock excavation bid of $50 per lineal vertical foot for an estimated 2500 lineal feet. The contract also provided that Benham would represent GRDA during construction and that it was responsible for certifying Transpower's applications for payment and requests for time extensions.

Under a separate contract with GRDA, Benham agreed to design, inspect, and administer the construction of the transmission line. GRDA also entered separate contracts for the clearance of the right of way and for the manufacture and delivery of the poles. Transpower subcontracted with Tri–State Drilling and Equipment Company for the excavation work.

Transpower's contract with GRDA required Transpower to complete construction of the line by April 30, 1985. Because of a delay in the delivery of the poles, GRDA, on Benham's recommendation, agreed to extend Transpower's deadline by 32 days and to pay it an additional $47,500. Transpower, Benham, and GRDA subsequently formalized this modification of the contract in Change Order No. 2.

Besides the late delivery of the poles, several other factors led to delays in the project, including bad weather, slow clearance of the right of way, unexpected subsurface rock conditions, and Tri–State's slow performance of the excavation work. Benham did not recommend that GRDA grant any of Transpower's requests for extension of the April 30 deadline based on these other delays until after Transpower had completed the project. Instead, after a progress meeting in January 1985, GRDA ordered, upon Benham's recommendation, that Transpower accelerate its progress and place sufficient people and equipment on the job to meet the contract deadline. Pursuant to this order, Transpower increased the number of workers and amount of equipment on the project as well as the number of hours and days worked.

[*] The Honorable Howard C. Bratton, Senior Judge, United States District Court for the District of New Mexico, sitting by designation.

Near the project's completion, Transpower submitted to Benham a claim for additional compensation to cover the cost of the accelerated work schedule. It also submitted a claim for additional compensation on behalf of Tri–State. After GRDA, following Benham's recommendation, rejected all of Transpower's claims, Transpower filed this action against GRDA and Benham, seeking $1,808,621.95 from GRDA for breach of contract, including $481,980.50 on behalf of Tri–State, and $1,326,441.45, plus punitive damages, from Benham for negligence. Transpower alleged that GRDA was responsible for the additional costs which Transpower and Tri–State had incurred in meeting GRDA's acceleration order because GRDA had failed to meets its contractual obligations for timely material deliveries and speedy right-of-way clearance, delaying the construction schedule and thus creating the conditions which ultimately required the acceleration order. Transpower alleged that Benham had negligently administered the contract by failing to grant any of its requests for extensions of the April 30 deadline, other than the extension granted in Change Order No. 2, until after the project had been completed and by certifying that Transpower's slow performance was the reason for GRDA's acceleration order.

The jury awarded Transpower $1,124,312.49 against GRDA and $663,220.72 against Benham. The trial court entered judgment against GRDA and Benham, jointly and severally, on Transpower's negligence claim. It subsequently denied GRDA's and Benham's motions for a directed verdict, judgment n.o.v., to alter or amend the verdict, and for a new trial. It also denied Transpower's motion for prejudgment interest but granted its motion to tax attorney's fees and for postjudgment interest on those fees. GRDA and Benham claim that the trial court erroneously denied their post-trial motions, improperly calculated the award of fees, and erroneously imposed postjudgment interest on the fees awarded. Transpower asserts that the trial court erred in denying its motion for prejudgment interest.

## II. GRDA's APPEAL

### A.

■ GRDA contends that the trial court erred in denying its motions for a directed verdict and for judgment n.o.v. We review rulings on motions for a directed verdict and for judgment n.o.v. under the same standard. *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495, 498 (10th Cir. 1984). We will reverse the trial court's denial of either motion only if, after a *de novo* review, we determine that the evidence taken in the light most favorable to the nonmoving party and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party. *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 467 (10th Cir.1990).

Oklahoma law defines the measure of damages in a breach-of-contract action as "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Okla.Stat.Ann. tit. 23, § 21 (West 1987). Although the jury may not speculate about the fact of damages, *Hardesty v. Andro Corp.–Webster Div.*, 555 P.2d 1030, 1034 (Okla.1976), uncertainty about their exact amount will not preclude recovery. *Larrance Tank Corp. v. Burrough*, 476 P.2d 346, 350 (Okla.1970); *Firestone Tire & Rubber Co. v. Sheets*, 178 Okl. 191, 62 P.2d 91, 93 (1936). Once a party has established the fact of damages, moreover, " 'it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits.' " *Hardesty*, 555 P.2d at 1035 (quoting *Southwest Ice & Dairy Prods. Co. v. Faulkenberry*, 203 Okl. 279, 220 P.2d 257, 261 (1950)). This evidence need not support a mathematically precise measure of damages. *Fiedler v. McKea Corp.*, 605 F.2d 542, 547 (10th Cir.1979) (applying Oklahoma law). A reasonable approximation of the loss will suffice. *Hoffer Oil Corp. v. Carpenter*, 34 F.2d 589, 592 (10th Cir. 1929), *cert. denied*, 280 U.S. 608, 50 S.Ct. 158, 74 L.Ed. 651 (1930).

GRDA asserts that Transpower's evidence of damages was insufficient because Transpower established only the difference between its total costs and the contract price without apportioning responsibility for the cost overruns between itself, Tri–State, and GRDA and without establishing the share of the cost overruns attributable to each alleged breach. GRDA contends that without such evidence, the jury could only speculate about the proper measure of damages. As a result, the trial court should have either withheld Transpower's breach-of-contract claim from the jury or else granted judgment in GRDA's favor notwithstanding the jury's verdict.

GRDA's argument ignores the rule in Oklahoma that the prohibition against the recovery of damages because of uncertainty applies to the *fact* of damages and not to their amount. *Hardesty*, 555 P.2d at 1034. Our review of the record indicates that there was sufficient evidence from which the jury could reasonably approximate Transpower's loss. Besides the extensive and detailed evidence of Transpower's total costs, the record includes documentary evidence and testimony concerning the claims of Transpower and Tri–State against each other. Indeed, the jury must have considered this evidence since its award compensates Transpower for only a little more than sixty percent of its total claim.

GRDA also complains that Transpower's evidence of damages was insufficient because it would not permit the jury to allocate damages on a claim-by-claim basis or to determine the exact percentage of the cost overruns for which Transpower was responsible. Oklahoma law, however, requires only that the evidence be the best which the nature of the case admits. *Id.* at 1035. Transpower introduced ample testimony that the interrelated nature of its claims prevented it from establishing damages on a claim-by-claim basis. Although GRDA disputed these assertions, it produc-

ed no evidence of its own claim-by-claim calculations to contradict Transpower's position. The jury, therefore, had before it the best evidence of damages which the nature of the case admits. That this evidence might not permit a mathematically precise apportionment of damages is irrelevant under Oklahoma law.

### B.

GRDA moved for a new trial, claiming that the trial court improperly instructed the jury on the measure of damages because it refused to give GRDA's proffered instruction on the "Total Cost Theory" of damages. GRDA also claimed that the evidence was insufficient to support the court's general damages instruction. The trial court denied GRDA's motion. We review the trial court's denial for a manifest abuse of discretion. *Patty Precision Prods., Co. v. Brown & Sharpe Mfg., Co.*, 846 F.2d 1247, 1251 (10th Cir.1988).

The trial court found that there was sufficient evidence to support a general damages instruction and so instructed the jury.[1] GRDA claims that because Transpower relied solely on evidence of its total cost, its evidence of damages was insufficient to support a general damages instruction. Since we have already concluded that Transpower's evidence of damages was sufficient to avoid a directed verdict, it was also sufficient to support a general damages instruction. GRDA further asserts that even if the general damages instruction were proper, the trial court abused its discretion by failing to instruct the jury that Transpower had failed to meet the elements of the Total Cost Theory. We agree with Transpower, however, that the trial court's determination that a general damages instruction was appropriate made a jury instruction on Transpower's failure to satisfy the prerequisites of the Total Cost Theory unneces-

---

1. The jury was instructed in pertinent part:
 [A] party need not prove the amount of his damages with mathematical exactness. It is sufficient if the party furnishes data from which the amount of damages can be established with reasonable certainty. You are in-structed that a party has proven the amount of his damages with reasonable certainty if he has presented evidence which shows the amount of damages as a matter of just and reasonable inference.

sary. This court, moreover, will not disturb a jury verdict unless it " 'has a substantial doubt whether the jury was fairly guided in its deliberations.' " *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 174 (10th Cir.1982) (quoting *Mid–Texas Communications v. American Tel. & Tel. Co.*, 615 F.2d 1372, 1390 (5th Cir.), *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980)). We entertain no such doubt in this case.

### C.

GRDA further contends that even if the evidence supports the jury's verdict based on a general damages instruction, the trial court erred in denying its motions for a directed verdict and for judgment n.o.v. because the contract bars Transpower's claims for duration-related damages resulting from unanticipated rock conditions as well as for additional damages resulting from GRDA's acceleration order. GRDA also contends that Transpower's claims are barred by accord and satisfaction and by estoppel. These claims are without merit.

The bid instructions which Transpower received prior to bidding on its contract with GRDA required all bidders to make a careful examination of the construction site. Both Transpower and Tri–State conducted a site investigation prior to bidding on the contract. The contract between GRDA and Transpower included a unit price for rock excavation of $50 per lineal vertical foot for an estimated 2500 lineal feet. During the course of its excavation work, Tri–State encountered a subsurface condition known as seamy limestone which made it much more difficult than expected to blast the subsurface rock. In addition,

the total amount of rock which Tri–State had to excavate was fifty percent greater than the estimate in the contract. At trial, Transpower claimed, on behalf of Tri–State, that although GRDA had compensated Transpower at the contract price for the rock excavated beyond the contract estimate, this amount did not take into account the additional duration-related costs resulting from the unforeseen seamy limestone and the excessive subsurface rock.

GRDA asserts that the trial court should have directed a verdict against Transpower on this claim. It contends that the bidding instructions, which require a careful site examination, and Article XV of the contract between GRDA and Transpower, which provides that Transpower will bear the risk of loss resulting from damage to the project caused by the elements,[2] unambiguously require Transpower to bear the risk of unexpected site conditions. We disagree.

■ Article XV of the contract is inapposite because it is no more than a common builder's risk provision. Instead, Transpower's claim falls squarely within Article V of the contract, which specifically provides that Transpower is entitled to an extension in the project's deadline if it encounters unforeseeable conditions.[3] Since GRDA has not challenged the jury's determination that the seamy limestone and additional subsurface rock were unforeseeable and since Article V of the contract entitles Transpower to recover its duration-related damages resulting from unforeseeable conditions, we must reject GRDA's argument.

**2.** Article XV provides in pertinent part:
The performance of this contract and the work hereunder is at the risk of the Contractor until the final acceptance thereof and payment therefor. He shall take all responsibility for the work and shall bear all losses resulting to him on account of the amount or character of the work, or because the nature of the land in or on which the work is done is different from what is assumed or expected, or on account of the weather, floods, fire, windstorm or other action of the elements.... If the work or any part ... thereof is destroyed or damaged from any of the

aforesaid causes, the Contractor, at his own cost ... shall restore the same....

**3.** Article V of the contract provides in pertinent part:
The Contractor agrees that the work shall be prosecuted regularly, diligently, and uninterruptedly as far as possible, but it is expressly understood and agreed that the rate of progress and the time for completing the work is subject to extension and revision in the event that the Contractor is delayed in performance due to unforeseeable causes beyond his control and without his fault.

### D.

■ We also reject GRDA's claim that Transpower cannot recover damages for its additional costs because it failed to comply with Articles XVIII and XIX of the contract, which provisions contain specific procedures for filing claims for additional compensation.[4] At trial, Transpower argued that the parties had abrogated Articles XVIII and XIX through their course of conduct. Oklahoma law permits parties to a construction contract to alter or abrogate through their course of conduct contractual requirements for submitting claims for extra work. *Flour Mills v. American Steel Bldg. Co.*, 449 P.2d 861, 863 (Okla.1969) (Syllabus by the Court). Furthermore, the question whether the parties have modified or abrogated a contractual provision through their course of conduct is one for the jury. *See Coston v. Adams*, 203 Okl. 605, 224 P.2d 955, 961 (1950).

Transpower produced evidence of several instances where GRDA, upon Benham's recommendation, paid Transpower for additional work even though Transpower had not complied with Articles XVIII and XIX. GRDA, for instance, compensated Transpower, pursuant to Change Order No. 2, for extra work resulting from the late delivery of poles even though Transpower submitted its itemized statement of the claim three weeks late. In fact, the Benham official responsible for administering the contract on behalf of GRDA admitted that Benham never denied one of Transpower's requests for additional compensation because Transpower had not timely filed the claim. Since our review of the record indicates that Transpower produced sufficient evidence to support the jury's determination that the parties had modified the contract through their course of conduct, we find no error in the trial court's denial of GRDA's post-trial motions based on this ground.

GRDA maintains, nonetheless, that Article XXVII of the contract prevented the parties from abrogating the requirements of Articles XVIII and XIX through their course of conduct. Article XXVII provides that no payment for, or acceptance of, work by Benham or GRDA will operate as a waiver of any contractual provision and that no waiver of a breach of the contract shall constitute a waiver of any subsequent breach. The time for GRDA to invoke this provision, however, has passed. Although GRDA may have relied on it during Transpower's performance of the contract to prevent Transpower from entering into a course of conduct which would abrogate the requirements of Articles XVIII and XIX, it would be manifestly unjust for us to enforce this provision after GRDA, through its own course of conduct, has essentially waived the benefits of the provision's protection.

### E.

■ GRDA also argues that Transpower's claims are barred either by accord and satisfaction or by estoppel. It contends that Change Order No. 2 was an accord and satisfaction of all of Transpower's claims for damages resulting from late pole deliveries. It also contends that because Transpower executed Change Order No. 2 without informing GRDA and Benham that it was preparing an additional claim against them, Transpower is estopped from pursuing its additional claim. These contentions are without merit.

The defenses of accord and satisfaction and of estoppel turn on questions of fact for the jury. A successful defense of accord and satisfaction requires the jury to find that the parties intended a subsequent

---

**4.** Article XVIII required Transpower to submit an itemized account for each month's additional work by the tenth day of the succeeding month and provided that Transpower's failure to comply with this procedure would bar it from receiving compensation for the extra work. Article XIX required Transpower to submit to Benham within 45 days of any damage caused by GRDA a written statement of the nature of the damage sustained. It also required that on the fifteenth day of the month succeeding the filing of the damage statement, Transpower submit an itemized account of the damage. Finally, the Article required Transpower to submit, within a reasonable time, a written protest against any additional work which it considered to be outside the contract.

agreement to discharge a prior obligation. *Polin v. American Petrofina Co.*, 589 P.2d 240, 242 (Okla.1978). The defense of estoppel requires the jury to find that one party's conduct reasonably led another to believe that the first party had relinquished some right. *Crowell v. Thoreau Center*, 631 P.2d 751, 752 (Okla.1981). Since our review of the record indicates that there was sufficient evidence from which a jury could determine that the parties did not intend Change Order No. 2 to discharge any other obligation and that Transpower did not demonstrate by its conduct any intention to relinquish a contractual right, we affirm the trial court's denial of GRDA's motions for a directed verdict and for judgment n.o.v. based on these defenses.

### F.

■ GRDA finally contends that the trial court abused its discretion by entering judgment jointly and severally against GRDA for the jury's award on Transpower's negligence claim against Benham. GRDA asserts that the trial court's action resulted in unfair surprise and undue prejudice because it had no indication prior to the trial court's action that it would be held responsible for Benham's negligence. GRDA concludes that if it had known that Transpower was suing it for Benham's negligence, it could have raised contributory or comparative negligence as a defense, proceeded in different areas of inquiry in its discovery, and provided additional expert testimony at trial.

GRDA's claim is disingenuous. GRDA received Benham's proposed jury instructions prior to the commencement of trial. Those instructions unequivocally indicate that Transpower considered Benham to be GRDA's agent and that Transpower expected the jury to award any damages against Benham jointly and severally against GRDA. If GRDA were surprised that it could be held jointly and severally liable for Benham's negligence, it could have moved for a continuance of the trial. GRDA, however, filed no such motion. GRDA also fails to support its claim of undue prejudice. It cites no evidence which it could have produced at trial had it known at an earlier time that it could be held jointly and severally liable for Benham's negligence. We, therefore, reject GRDA's final assignment of error.

### III. BENHAM'S APPEAL

Benham contends that the trial court erred in denying its motion for a directed verdict on Transpower's negligence claim because the contract between Transpower and GRDA indemnifies Benham against its own negligence absent a showing that Benham's tortious act or omission was in bad faith. Benham asserts that since Transpower produced no evidence that Benham had acted, or failed to act, in bad faith, the contract bars Transpower's recovery in tort as a matter of law. We disagree.

Oklahoma's courts strictly construe agreements to indemnify a party against its own negligence. *Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 152 (Okla.1988). To be enforceable, the agreement must meet the following three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy. *See id.* at 152–53; *Webb v. Western Carter Cty. Water and Sewage Corp.*, 575 P.2d 124, 126 (Okla.1977); *Mohawk Drilling Co. v. McCullough Tool Co.*, 271 F.2d 627, 632 (10th Cir.1959) (applying Oklahoma law). In this case, the parties dispute only whether the alleged indemnification clause is sufficiently unambiguous to warrant enforcement.

■ Benham contends that the following language in Article III of the contract between GRDA and Transpower suffices to indemnify it against its own negligence absent a showing of bad faith:

> Neither the Engineers' authority to act under this article or elsewhere in the contract documents nor any decision made by the Engineers in good faith either to exercise or not exercise such authority shall give rise to *any duty* or

responsibility of the Engineers to the Contractor....

(Emphasis added.) Benham relies primarily on *Colorado Milling & Elevator Co. v. Chicago, Rock Island & Pacific R.R. Co.,* 382 F.2d 834 (10th Cir.1967) (applying Oklahoma law), to support its interpretation of this provision.

In *Colorado Milling,* a lessor of property claimed that the lease required the lessee to indemnify the lessor for injuries to a third party resulting from a condition on the lessor's property which condition preexisted the lease. The lease required the lessee to indemnify the lessor "against all claims ... arising out of injury ... or death ... connected with ... any condition whatsoever in the premises." *Id.* at 835–36. The lessee sought to avoid liability under this clause by claiming that it did not apply to the condition which caused the injury because that condition existed prior to the execution of the lease. This court rejected the argument, reasoning that the "all-inclusive" language of the indemnification provision was unambiguous and, therefore, enforceable. *Id.* at 836. Benham asserts that the language in Article III referring to "any duty," like the language in *Colorado Milling* referring to "any condition whatsoever," is all-inclusive and sufficiently unambiguous to warrant enforcement. We disagree.

*Colorado Milling* is distinguishable from this case because it did not turn on whether the contractual provision was sufficiently clear to exculpate the lessor from its own negligence but rather on whether the exculpatory clause applied to a preexisting condition on the land. Article III, moreover, simply does not express in sufficiently unambiguous language Transpower's in-

tent to exculpate Benham from its own negligence absent a showing of bad faith. Although a specific reference to "negligence" is unnecessary, Article III lacks the "broad and comprehensive language relating to exculpation from negligence" which Oklahoma law requires. *Standard Ins. Co. v. Ashland Oil & Refining Co.,* 186 F.2d 44, 46–47 (10th Cir.1950) (applying Oklahoma law).[5] In fact, Article III is no more clear than the language in another alleged indemnification provision which we held did not meet the requisite standard of clarity that Oklahoma law requires. *See Sinclair Oil & Gas Co. v. Brown,* 333 F.2d 967, 968–69 (10th Cir.1964) (refusing to enforce as an indemnification provision a clause which provided, "Contractor ... agrees ... to hold [Sinclair] harmless from any and all liability for damages to the person ... of any and all persons resulting from the operation of Contractor hereunder"). Since Article III does not unequivocally exculpate Benham from its own negligence, the trial court properly denied Benham's motion for a directed verdict.

The trial court also properly denied Benham's motion for a directed verdict based on its defense of accord and satisfaction. Benham contends that since the facts underlying Transpower's negligence claim are the same as those underlying the dispute which was settled through the execution of Change Order No. 2, the Change Order was an accord and satisfaction not only of Transpower's breach-of-contract claim against GRDA but also of Transpower's negligence claim against Benham. Benham's argument is fundamentally flawed. Since the jury rejected GRDA's defense of accord and satisfaction based on Change Order No. 2, Benham certainly cannot take refuge from Transpower's negligence claim

---

**5.** *See and compare Fretwell,* 764 P.2d at 152 (enforcing indemnification provision which stated, "Subscriber agrees to indemnify ... and hold Protection harmless from any and all claims ... whether these claims be based upon ... negligence ... on the part of Protection"); *Tyler v. Dowell, Inc.,* 274 F.2d 890, 894–95 (10th Cir.), *cert. denied,* 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960) (enforcing indemnification provision which stated that contractor agrees to "assume and bear all risk of accidents and damages to persons and property which may occur in the course of contractor's operations ... and to indemnify and hold [owner] harmless against ... such accidents and damages"); *Trumbower v. Sports Car Club,* 428 F.Supp. 1113, 1116–17 (W.D.Okla.1976) (applying Oklahoma law) (enforcing indemnification provision which stated that the Undersigned "hereby releases ... the Sports Car Club ... from all liability to the Undersigned ... for all losses or damage ... on account of injury to the ... Undersigned, whether caused by the negligence of the [Sports Car Club] or otherwise").

behind that agreement. *Cf. Cox v. City of Freeman,* 321 F.2d 887, 892–93 (8th Cir. 1963) (jury's finding of accord and satisfaction bars contractor's breach-of-contract claim against owner as well as its negligence claim against owner's construction engineer).

## IV. TRANSPOWER'S CROSS–APPEAL

 Transpower cross-appeals the trial court's denial of its motion for prejudgment interest. The trial court held that Transpower was not entitled to prejudgment interest because its damages were not certain or calculable prior to judgment. We will reverse the trial court's finding of fact only if it is clearly erroneous. *Bill's Coal Co. v. Board of Pub. Utils.,* 887 F.2d 242, 244 (10th Cir.1989).

The law of the forum state governs the availability of prejudgment interest in a diversity action. *See Kinsella v. Leonard,* 415 F.2d 574, 578 (10th Cir.1969). Oklahoma law provides that "[a]ny person who is entitled to recover damages certain, or capable of being made certain by calculation ... is entitled also to recover [prejudgment] interest." Okla.Stat.Ann. tit. 23, § 6 (1987). Damages are certain if they are "liquidated or capable of ascertainment by calculation or resort to well-established market values." *Sandpiper North Apartments, Ltd. v. American Nat'l Bank and Trust Co.,* 680 P.2d 983, 993 (Okla.1984). Damages are not certain where their calculation is left to the best judgment of the fact-finder. *See City of Tulsa v. Copp,* 127 Okl. 128, 260 P. 16, 19–20 (1927); *Liberty Nat'l Bank & Trust Co. v. Acme Tool Div.,* 540 F.2d 1375, 1383 (10th Cir.1976) (applying Oklahoma law).

Transpower contends that the trial court erred in denying its motion for prejudgment interest because its damages were calculable prior to judgment by resort to the fixed market value of the additional labor and materials which it provided as a result of GRDA's breaches of contract. Transpower argues that its claim is indistinguishable from that of the contractor in *Cook v. Oklahoma Bd. of Pub. Affairs,* 736 P.2d 140, 153 (Okla.1987), who was

awarded prejudgment interest because the cost of his additional work was readily calculable by reference to the market value of the extra labor and materials he provided. Transpower also cites *City of Tulsa* where a homeowner was awarded prejudgment interest because the amount of damage to his home resulting from the City's negligence was readily calculable based upon "fixed standards of costs and value." 260 P. at 20.

Contrary to Transpower's assertion, *Cook* and *City of Tulsa* are distinguishable from this case. In both those cases, the jury exercised no discretion in calculating damages. *See Cook,* 736 P.2d at 152; *City of Tulsa,* 260 P. at 20. In this case, however, the jury had to assess the evidence to apportion liability for the additional costs of constructing the transmission line. Indeed, the jury, in exercising its best judgment, awarded Transpower just over sixty percent of its total claim against GRDA. If Transpower's damages were capable of being made certain prior to trial, then the jury's award would not have differed from Transpower's total claim by such a significant amount. Since Transpower has not demonstrated that its damages were calculable prior to trial, we must reject its contention that the trial court's denial of its motion for prejudgment interest was clearly erroneous.

## V. ATTORNEY'S FEES

 A prevailing party cannot recover attorney's fees in Oklahoma in the absence of a statute or an enforceable contract which provides for their recovery. *Sisney v. Smalley,* 690 P.2d 1048, 1049 (Okla. 1984). The contract between Transpower and GRDA makes no provision for the recovery of attorney's fees. Oklahoma law does permit the recovery of fees in a breach-of-contract action, Okla.Stat.Ann. tit. 12, § 936 (1987), but not in a negligence action. *See Sisney,* 690 P.2d at 1051.

The trial court awarded Transpower attorney's fees for the time it expended in preparing its breach-of-contract action against GRDA. The court included in the fee award the time Transpower devoted to

discovering and presenting evidence of Benham's negligence. The court reasoned that since Benham's negligent acts were also GRDA's breaches of contract, Transpower would have necessarily expended the time in discovering and presenting evidence of Benham's negligence whether or not Benham had been a party to the litigation. We will reverse the trial court's finding only if it is clearly erroneous. *Bill's Coal Co.*, 887 F.2d at 244. A finding is clearly erroneous if "it is without factual support in the record." *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987).

GRDA contends that since neither its contract with Transpower nor Oklahoma law provides for the recovery of fees in a negligence action, the trial court's fee award was erroneous because it included fees which Transpower incurred solely in prosecuting its negligence action against Benham. GRDA further contends that *Sisney v. Smalley*, 690 P.2d 1048, requires the trial court to apportion fees between those incurred prosecuting a breach-of-contract action and those incurred prosecuting a related negligence action. Since GRDA produced evidence that Transpower incurred a portion of its attorney's fees solely on its negligence action against Benham, the trial court erred by failing to limit Transpower's recovery of fees to those incurred prosecuting its breach-of-contract action.

We disagree with GRDA's reading of *Sisney.* In that case, the court affirmed the trial court's apportioning of fees based on the undisputed evidence that the prevailing party's attorney devoted seventy-five percent of his services to a property-damage claim and twenty-five percent to a related negligence claim. The court rejected the appellant's argument that the prevailing party was not entitled to recover any fees because his attorney had devoted a portion of his time on the negligence claim. 690 P.2d at 1051. *Sisney*, therefore, does not, as GRDA contends, require attorneys to apportion fees in every case involving a negligence claim and some other claim for which fees are recoverable. Instead, it holds that a prevailing party can recover fees for that portion of his attorney's work

not expended solely in prosecuting a related negligence action.

Here, the trial court found that all of the time which Transpower devoted to discovering and preparing its negligence claim against GRDA would have been necessarily incurred even if Benham had not been a party to the litigation. The record supports the court's finding. At the hearing on attorney's fees, Transpower produced undisputed testimony that it could not have succeeded in its claims against GRDA without proving Benham's negligence. The pretrial order and jury instructions also attest to the interrelated nature of Transpower's breach-of-contract and negligence claims. Since there is factual support in the record for the trial court's finding, we must reject GRDA's contention that it was clearly erroneous.

## VI. POSTJUDGMENT INTEREST

The trial court awarded Transpower postjudgment interest on attorney's fees. It relied on *Everaard v. Hartford Accident and Indem. Co.*, 842 F.2d 1186, 1193–94 (10th Cir.1988), which held that in a diversity action 28 U.S.C. § 1961, rather than state law, governs the award of postjudgment interest on a money judgment. The statute provides in pertinent part that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. GRDA challenges the trial court's ruling which we will affirm unless it is clearly erroneous. *Bill's Coal Co.*, 887 F.2d at 244.

GRDA contends that *Everaard* is distinguishable from this case because we awarded postjudgment interest on a money judgment, not on attorney's fees. GRDA further contends that all of the cases on which Transpower relies to support its assertion that fees are part of a money judgment and, therefore, subject to interest under 28 U.S.C. § 1961 involve a federal question. *See, e.g., R.W.T. v. Dalton*, 712 F.2d 1225, 1234–35 (8th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) (U.S. Const.Amends. IV, XIV; 42 U.S.C. § 1983); *Copper Liquor, Inc. v.*

*Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (15 U.S.C. § 1). The rationale for including attorney's fees as part of a money judgment and taxing interest on them is the same, however, whether state or federal law provides the basis for the underlying cause of action. As the Ninth Circuit has explained,

> [T]here exists no real distinction between judgments for attorneys' fees and judgments for other items of damages.... [O]nce a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed.

*Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir.1973) *quoted in R.W.T.*, 712 F.2d at 1234.

GRDA also asserts that even if this court would apply § 1961 to the award of fees in a diversity action, extending that holding to this case would violate the precepts of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). GRDA argues that since interest on attorney's fees is not recoverable under Oklahoma law, *McAlester Urban Renewal Auth. v. Hamilton*, 521 P.2d 823, 826 (Okla.1974), the imposition of interest on fees would create a substantive right available in federal court which is unavailable in state court. We disagree with GRDA's characterization of interest on fees as substantive. At best, it is " 'in the uncertain area between substance and procedure' " and, therefore, " 'rationally capable of classification as either.' " *See Weitz Co. v. Mo–Kan Carpet, Inc.*, 723 F.2d 1382, 1386 (8th Cir.1983) (quoting *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)). *See also Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 623 (5th Cir.1988).

We are, moreover, unconcerned that the application of § 1961 in diversity cases where the forum state's law does not provide for interest on fees will result in forum shopping. Rules regarding postjudgment interest "do not furnish any greater incentive[ ] to use the courts of the United States than most of the other procedural features which are unique to the federal forum." *Nissho–Iwai*, 848 F.2d at 624. Since we conclude that attorney's fees fall within § 1961's purview and that the imposition of interest on fees is a procedural matter, we agree with the trial court that *Everaard* governs this case and reject GRDA's contention that the trial court's ruling was clearly erroneous.

## VII. CONCLUSION

Since we find that the trial court ruled correctly on all the issues raised on appeal, we AFFIRM its judgment in all respects.