MIDAMERICA FEDERAL SAVINGS & LOAN ASSOCIATION, a federal savings and loan association; Federal Deposit Insurance Corporation, as Manager of FSLIC Resolution Fund, Plaintiff–Appellee and Cross–Appellant,

v.

SHEARSON/AMERICAN EXPRESS, INC., a Delaware corp.; Don Crow, an individual, Defendants–Appellants and Cross–Appellees.

Nos. 91–5077, 91–5108.

United States Court of Appeals, Tenth Circuit.

April 28, 1992.

Scott R. Rowland (and Richard P. Hix, of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., and Richard S. Gill, F.D.I.C., Washington, D.C., with him on the brief), for plaintiff-appellee and cross-appellant.

Claire V. Eagan (C. Kevin Morrison, with her on the brief) of Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Okl., for defendants-appellants and cross-appellees.

Before McKAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

We have already addressed the merits in this case. *See MidAmerica Federal Savings & Loan v. Shearson American/Express Inc.*, 886 F.2d 1249 (10th Cir.1989) (*MidAmerica I*). This appeal centers entirely on the resulting attorneys' fees award. Plaintiff-appellee MidAmerica Federal Savings & Loan ("MidAmerica")[1] brought this lawsuit in 1984, alleging numerous federal securities and pendent state causes of action arising from its purchase of $50 million in GNMA Series I Investment Trusts from Defendant-appellant Shearson/American Express, Inc., through Shearson's broker, Defendant-appellant Don Crow (collectively referred to as "Shearson"). After two jury trials, the case culminated in verdicts in favor of MidAmerica on two pendent state claims: (1) a breach of fiduciary duty claim; and (2) an Oklahoma Securities Act § 408(a)(2) claim, Okla.Stat.Ann. tit. 71, § 408(a)(2) (West Supp.1992).[2] Upon instructions that recovery would be had on the highest dam-

---

1. The Federal Deposit Insurance Corporation substituted as plaintiff on December 27, 1989. For consistency with the prior published opinion, however, we refer to the plaintiff as MidAmerica.

2. The jury also found in favor of MidAmerica on its federal Securities Act of 1933 § 12(2)

claim; however, the district court ordered a new trial on the issue, acknowledging an erroneous jury instruction. The claim subsequently was dismissed pursuant to Fed.R.Civ.P. 41(a)(1). *MidAmerica I*, 886 F.2d at 1251 n. 1.

age amount only, the jury assessed damages of $7,513,851 (plus $1.00 punitive damages) on the breach of fiduciary duty claim, and $6,513,851 on the § 408(a)(2) claim. The district court then awarded actual damages of $7,513,851 (plus $1.00 punitive damages), the jury's highest damage assessment. Shearson appealed, and we affirmed the judgment. *MidAmerica I*, 886 F.2d 1249.

In 1986 MidAmerica applied for attorneys' fees resulting from the § 408(a)(2) claim, ultimately requesting $717,424.50. The court held the matter in abeyance until disposition of the appeal. After the appeal was decided, the court eventually awarded MidAmerica $512,197.15 in attorneys' fees on April 22, 1991. This amount did not include post-merits-judgment interest. Shearson appeals, contending that (1) the judgment allows an impermissible double recovery, and (2) MidAmerica waived its right to attorneys' fees by failing to submit evidence of the fees to the jury.[3] MidAmerica cross-appeals, contending that it should have received interest on the award from July 23, 1986, the date of the original merits judgment. Shearson's appeal presents questions of state law, which we review de novo with no deference to the district court's legal analysis, *see Salve Re-*

*gina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). MidAmerica's cross appeal presents a question of federal law, which we review de novo. We consider each argument in the order presented and affirm the judgment.

## I. Shearson's Appeal, No. 91–5077.

### A. *Double Recovery.*

During deliberations the jury in this case posited to the court certain written questions that indicated confusion regarding the measure of damages for the breach of fiduciary duty claim. The court responded by referring the jury to the instructions, which contained no reference to attorneys' fees either in the breach of fiduciary duty provision or the § 408 provision. In spite of our previous holding on the merits, Shearson now contends that these communications unequivocally indicate that the $1 million excess of the breach of fiduciary duty damages over the § 408(a)(2) damages represents an effort by the jury to compensate MidAmerica for attorneys' fees. Therefore, Shearson contends that an additional statutory award under § 408 is an impermissible double-recovery of attorneys' fees.[4]

---

**3.** Shearson also argues that the attorneys' fees award was barred because the merits judgment was silent on the issue and that the payment of the judgment extinguished any right to recover attorneys' fees. These arguments are totally lacking in support. We therefore will address the arguments no further except to note that it is not unusual for a trial court to enter judgment and reserve the attorneys' fees judgment for a later date, just as was done in this case. *See Bundinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (adopting bright line rule that lack of final judgment on attorneys' fees issue does not affect the finality and appealability of the underlying merits judgment).

**4.** The Oklahoma securities fraud statute provides in relevant part:

**§ 408 Civil Liabilities**
(a)(2) [The fraudulent party] is liable:
(A) in the case of an offer or sale of a security by such means, to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, *together with interest at ten percent (10%) per year from the date of*

*payment, costs, and reasonable attorneys' fees,* less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at ten percent (10%) per year from the date of disposition....

. . . .

(i) ... Any defendant who prevails in an action brought under paragraph [(a)(2)] of this section may recover his reasonable attorneys' fees and costs in the action from the plaintiff if the court, in its discretion, determines that the action was without substantial merit. *Any plaintiff who prevails in an action brought under paragraph [(a)(2)] of this section may recover his reasonable attorneys' fees and costs in the action from the defendant.*

. . . .

(*l*) The rights and remedies provided for in this title are in addition to other rights or remedies that may exist in law or in equity; however, no additional cause of action is created unless specified in this section or Section 202(e) of this title.
Okla.Stat.Ann. tit. 71, § 408 (West Supp.1992).

It is undisputed that a plaintiff generally may not double recover damages. *See, e.g., U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1259–60 (10th Cir.1988) (compensatory damages for federal securities claim and state breach of fiduciary duty claim duplicative); *Clappier v. Flynn*, 605 F.2d 519, 530–31 (10th Cir.1979) (compensatory damages for federal civil rights claim and state civil rights claim duplicative); *Lexton–Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822–24 (Colo. 1992) (punitive damages for misappropriation claim and treble damages for deceptive trade practices claim duplicative because punitive and treble damages serve the same deterrent purpose).

This case, however, does not involve double recovery of a certain type of damages— duplicative compensatory or duplicative punitive awards, for example. Instead, it involves two separate awards—one compensatory damages award and one attorneys' fees award. The jury communications to the court do evidence some confusion regarding the measure of damages for the breach of fiduciary duty claim, but we answered this question in the prior appeal by holding that the damages assessed on the fiduciary duty claim were supported by the evidence. *MidAmerica I*, 886 F.2d at 1259. Attorneys' fees estimates were not a part of the supporting evidence, nor could they properly be in evidence on the fiduciary duty claim since Oklahoma follows the general American Rule prohibiting attorneys' fees awards in the absence of a specific statutory or contractual provision. *Kay v. Venezuelan Sun Oil Co.*, 806 P.2d 648, 650 (Okla.1991). *See also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Shearson itself points in its second argument to this lack of evidence. *See infra* § B. MidAmerica therefore has not double-recovered attorneys' fees.

Nevertheless, Shearson argues that MidAmerica is legally barred from recovering a § 408 attorneys' fees award because the underlying judgment was entered on the higher fiduciary duty claim award for which the American Rule prohibiting attorneys' fees awards applies. It contends that

the court entered an impermissible "mix and match" verdict by combining the § 408 attorneys' fees award with the breach of fiduciary duty compensatory and punitive damages award. Section 408(*l*) provides, however, that "[t]he rights and remedies provided for in this title are in addition to other rights or remedies that may exist in law or in equity...." *See supra* note 4. Oklahoma courts have not addressed this provision, but we think that they would interpret it much as have other jurisdictions with similar statutes; that is, allow aggregation of all remedies that are not duplicative. *See, e.g., Naranjo v. Paull*, 111 N.M. 165, 803 P.2d 254, 261 (App.1990) (interpreting similar securities act savings clause as allowing aggregation of securities act compensatory damages and common law fraud punitive damages); *Bradley v. Hullander*, 266 S.C. 188, 222 S.E.2d 283, 287 (1976) (interpreting identical securities act savings clause as indication of clear intent to state that securities act remedies "are in addition to all other causes of action or remedies at law or in equity").

We addressed a similar situation in *Young v. Taylor*, 466 F.2d 1329 (10th Cir. 1972). In that case, the jury returned a general verdict supported by three different theories: (1) a federal Rule § 10b–5 claim; (2) a pendent Utah securities fraud claim; and (3) a pendent Utah common law fraud claim. The 10b–5 claim did not encompass recovery for punitive damages or attorneys' fees, but the pendent common law claim provided for punitive damages, and the pendent securities fraud claim provided for attorneys' fees. Interpreting the savings clause in § 28(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78bb(a), we held that the plaintiff could aggregate all remedies that were not duplicative:

> A reasonable limiting effect is given by interpreting § 28(a) as meaning that if a federal claim is maintained as here, recovery of actual damages twice on separate claims in the action is prohibited, but that if the elements of a state claim are necessarily found to exist, punitive damages and attorneys' fees allowed under

state law are not barred. We feel we should construe the Act in a way that would save these rights under state law. Therefore, we conclude we should sustain the punitive damages and attorney's fees awarded here.

*Young,* 466 F.2d at 1338. Accordingly, MidAmerica is entitled to recover its attorneys' fees because the award simply is not duplicative given our prior holding on the merits. To hold otherwise would render the § 408(*l*) savings clause meaningless.

Shearson cites *Grogan v. Garner,* 806 F.2d 829 (8th Cir.1986), contending that it expressly disallows MidAmerica's "mix and match" recovery. In *Grogan,* the plaintiffs attempted to recover prejudgment interest on their federal Rule 10b–5 claim as well as punitive damages on their pendent state common law fraud claim. The Eighth Circuit held:

> When a federal securities claim overlaps with a pendent state law claim, the plaintiff is entitled to the maximum amount recoverable under any claim. Jacobs, *The Measure of Damages in Rule 10b–5 Cases,* 65 Geo.L.J. 1093, 1166 (1977). This does not require an election of remedies. Instead, *[Plaintiffs] are each entitled to the greatest amount recoverable under any single theory pled, with actual damages plus prejudgment interest representing one single amount and actual damages plus punitive damages representing the other single amount.*

*Id.* at 839 (emphasis supplied). Citing the emphasized language, Shearson contends that MidAmerica should have been forced to choose between the two pendent state remedies, with § 408 actual damages plus attorneys' fees representing one single amount and breach of fiduciary duty actual damages plus punitive damages representing the other single amount.

Shearson's expansive reading of *Grogan* is misplaced. The *Grogan* court held merely that plaintiffs may not recover both federal Rule 10b–5 prejudgment interest and overlapping pendent state punitive damages. We do not have that question before

us; MidAmerica's federal claim was dismissed. *See supra* note 2.[5] Moreover, Shearson's interpretation of *Grogan* directly conflicts with our holding in *Young,* for we did not force the *Young* plaintiff to choose one state remedy to the exclusion of the other. Instead, we allowed the plaintiff to recover punitive damages under the common law fraud claim and attorneys' fees under the pendent securities claim. 466 F.2d at 1337–68. *See also Hunt v. Miller,* 908 F.2d 1210, 1216 n. 13 (4th Cir. 1990) (plaintiffs allowed to aggregate attorneys' fees under pendent state securities claims and punitive damages under pendent common law claim); *E.H. Boerth Co. v. Lad Properties,* 82 F.R.D. 635, 646 (D.Minn.1979) (plaintiff allowed to aggregate pendent state attorneys' fees award pursuant to state securities claim even though damages on state securities claim were less than damages awarded under other state and federal claims).

Finally, Shearson cites *Kelco Disposal, Inc. v. Browning–Ferris Industries,* 845 F.2d 404 (2d Cir.1988), *aff'd,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), in support of its "mix and match" argument. The *Kelco* jury found $51,146 actual damages under both a federal Sherman Act § 2 antitrust claim and a pendent state business tort claim and $6,000,000 of punitive damages on the pendent claim. Unsatisfied with the $6,051,146 in actual and punitive damages, the plaintiff on cross-appeal sought in addition to recover attorneys' fees under the antitrust claim. The Second Circuit rejected the cross-appeal, affirming the district court's judgment which required the plaintiff to chose either the federal or the state remedy. Shearson contends that MidAmerica likewise should have to choose one or the other remedy. Once again, the *Kelco* case is inapposite; it dealt with overlapping federal and state claims, did not involve a securities law issue, and contained no reference to any type of savings clause such as § 408(*l*). Moreover, unlike this case, the *Kelco* court stated that the punitive damage award was

---

**5.** Shearson also cites *Cyrak v. Lemon,* 919 F.2d 320, 326 (5th Cir.1990), another inapposite case

dealing with overlapping federal and state claims.

more than adequate to handle the "attorneys' fee without discomfiture." *Id.* at 411.[6] The award should be affirmed on this issue.

### B. *Waiver.*

■ Shearson next argues that MidAmerica waived any right to an attorneys' fees award by failing to present evidence of the fees to the jury. This argument of course turns on whether the § 408 attorneys' fees award is a jury question. Shearson argues that it is a jury question because it is listed as an element of substantive damages in the statute. *See supra* note 4, § 408(a)(2) (emphasized). The Ninth Circuit, addressing this argument in the context of an identical Idaho statute, held that

[t]he mere inclusion of reasonable attorneys' fees in [the statute] as an item of recovery does not mean that the subject of attorneys' fees should have been submitted to the jury as a question at law. The allowance and amount of attorneys' fees is not a jury question, but is within the sound discretion of the trial judge.

*Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 776 (9th Cir.1984) (interpreting Idaho Code § 30-1446).

We agree with the Ninth Circuit's interpretation, and we find no authority to indicate that the Oklahoma Supreme Court would interpret § 408 differently.[7] Shearson argues that the Oklahoma Supreme Court decided the issue in *Lambrecht v.*

*Bartlett,* 656 P.2d 269 (Okla.1982) by listing attorneys' fees as an element of damages. The *Lambrecht* court, however, did not have to decide the issue of whether attorneys' fees should be a jury question. The court merely remanded the case, instructing the lower court to direct a verdict and award damages in accordance with the statute. By reciting items of recovery on directed verdict the court did nothing more than paraphrase the statute. Accordingly, we find no waiver.

### II. MidAmerica's Cross Appeal, No. 91-5108.

■ MidAmerica argues that it should receive postjudgment interest on the attorneys' fees award from July 23, 1986, the date of the merits judgment, to the present. Postjudgment interest on an attorneys' fees award is a question of federal law, controlled by 28 U.S.C. § 1961, regardless of whether the fees are awarded under a federal statute or a pendent state statute. *See Transpower Constructors v. Grand River Dam Authority,* 905 F.2d 1413, 1423-24 (10th Cir.1990).

■ Section 1961 provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such *interest shall be calculated from the date of the entry of the judgment....*" 28 U.S.C. § 1961(a) (emphasis supplied). MidAmerica focuses our attention on the emphasized language, contending that

---

**6.** In *Kelco* the Second Circuit dealt with an extraordinarily large punitive damages award in relation to the actual damages and attorneys' fees sought. On writ of certiorari, the United States Supreme Court noted that this verdict was the largest punitive damages award ever recorded in the state of Vermont, but held that it did not violate the excessive fines clause of the Eighth Amendment. 492 U.S. 257, 264, 109 S.Ct. 2909, 2914, 106 L.Ed.2d 219 (1989) (excessive fines clause does not apply "in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded"); *id.* at 278 n. 24, 109 S.Ct. at 2922 n. 24 (largest punitive damage award in Vermont history).

**7.** Federal law generally governs the allocation of tasks between the court and the jury. *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Plantation*

*Key Developers, Inc. v. Colonial Mortg. Co.,* 589 F.2d 164, 171 (5th Cir.1979). We see no need to engage this issue, however, because the parties have assumed that Oklahoma law applies and because we see no conflict between federal law and the interpretation we have ascribed to Oklahoma. *See Bundinich v. Becton Dickinson & Co.,* 486 U.S. 196, 200, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action [as in this case, *see supra* note 4, § 408(i)].") (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* § 2665 (1983) (court is better suited to determine analogous costs under Rule 54(d))).

*"from the date of the entry of the judgment"* refers to the date of the merits judgment in this case because MidAmerica became unconditionally entitled to a mandatory § 408(i) attorneys' fees award on that date. Shearson, on the other hand, argues that MidAmerica is in reality asking for prejudgment interest that clearly is not covered under the statute. Accordingly, it argues that *"from the date of the entry of the judgment"* refers to April 22, 1991, the date of the judgment that quantified the attorneys' fees award.[8] The district court ruled in favor of Shearson on this point, citing *Ramos v. Lamm,* in which we stated that "[g]enerally, no prejudgment interest should be paid for the period before the [attorneys'] fees are awarded." 713 F.2d 546, 555 (10th Cir.1983).

We previously have held that judgments for attorneys' fees awards differ little from money judgments for " 'other items of damages,' " and hence we have allowed § 1961 postjudgment interest on attorneys' fees awards to accrue when the award is included in the final merits judgment. *Transpower Constructors,* 905 F.2d at 1423–24 (quoting *Perkins v. Standard Oil Co.,* 487 F.2d 672, 675 (9th Cir.1973)). This is consistent with the purpose of § 1961: " 'to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.' " *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835–36, 110 S.Ct. 1570, 1575–76, 108 L.Ed.2d 842 (1990) (quoting *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1280 (3d Cir.1987)). Key to the *Kaiser* holding is the date damages are " 'ascertained' in a meaningful way." *Id.* at 836. Even though a plaintiff obviously has suffered a loss before such date, interest on the loss is not available under § 1961. *Id.* (citing *FDIC v. Rocket Oil Co.,* 865 F.2d 1158 (10th Cir.1989)). Treating an attorneys' fees award the same as we would any other money judgment, we see no way to square MidAmerica's request for interest

on an unliquidated attorneys' fees award with *Kaiser.* Any available postjudgment interest began to accrue on April 22, 1991, the date the fees were meaningfully ascertained and included in a final, appealable judgment.

We are fully aware that our holding contradicts the language of *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 544–45 (5th Cir.1983), in which the Fifth Circuit established the following rule for accrual of § 1961 postjudgment interest on an attorneys' fees award:

> *If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment.* If, however, judgment is rendered without mention of attorneys' fees, and the allowance of such fees is within the discretion of the court, interest will accrue only from the date the court recognizes the right to such fees in a judgment.

*Id.* at 545 (emphasis supplied). *See also Jenkins v. Missouri,* 931 F.2d 1273, 1275–76 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991); *Mathis v. Spears,* 857 F.2d 749, 759–60 (Fed.Cir.1988). MidAmerica argues that under the *Copper Liquor* test it should be entitled to interest from the date of the merits judgment because it became unconditionally entitled to the attorneys' fees under § 408 on that date.

We seriously doubt whether the § 408 award is mandatory under Oklahoma law. *See Andrews v. Blue,* 489 F.2d 367, 377 (10th Cir.1973) (similar Colorado attorneys' fees provision "permissive rather than mandatory"). Even if it were mandatory, however, we would reject the *Copper Liquor* test in favor of a rule accruing postjudgment interest from the date on which the attorneys' fees are quantified and reduced to a judgment. This holding is consistent with the requirement that interest on any type of damages should not accrue until the damages are "meaningfully ascer-

---

8. Shearson does not contest MidAmerica's right to receive postjudgment interest from April 22, 1991, to the present.

tained." *See Kaiser*, 494 U.S. at 836, 110 S.Ct. at 1576. Moreover, it is consistent with the traditional notion that interest should not accrue on an unliquidated damage amount. *See Fleming v. County of Kane*, 898 F.2d 553, 565 (7th Cir.1990) ("Prior to the date the judgment on attorney's fees was entered, plaintiff's attorneys' claim for unpaid attorney's fees was unliquidated and, as such, not entitled to interest.").

Notwithstanding the above, MidAmerica argues that the equities of this case balance in favor of an award of interest for the five years between the date of the merits judgment and the date of the attorneys' fees judgment. But the district court fully considered the equities in denying MidAmerica prejudgment interest under state law for such period. *See MidAmerica Federal Savings & Loan Association v. Shearson American Express*, No. 84–C–10–C, unpub. order at 6–7 (N.D.Okla. April 22, 1991) (citing *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255, n. 43 (10th Cir.1988)). As the interest for this period is properly classified as prejudgment interest on the pendent § 408 claim, it is controlled by state law, and we review the district court's determination for an abuse of discretion. *U.S. Industries, Inc.*, 854 F.2d 1223, 1254–55 & n. 43. Under Oklahoma law prejudgment interest is available on a damages amount which is "certain." Okla.Stat.Ann. tit. 23, § 6 (West 1987). "Damages are certain if they are 'liquidated or capable of ascertainment by calculation or resort to well-established market values.'" *Transpower Constructors*, 905 F.2d at 1422 (quoting *Sandpiper North Apartments, Ltd. v. American Nat'l Bank and Trust Co.*, 680 P.2d 983, 993 (Okla. 1984)). Assuming that a § 408 attorneys' fees award can be classified as "damages" under this prejudgment interest provision, a point that MidAmerica has not addressed and we decline to decide, we cannot find an abuse of discretion in the district court's determination.

AFFIRMED.